COLORADO COURT OF APPEALS                                    2016COA165

Court of Appeals No. 14CA1987
City and County of Denver District Court No. 13CV32470
Honorable Morris B. Hoffman, Judge

Trina McGill,

Plaintiff-Appellant,

v.

DIA Airport Parking, LLC, d/b/a Wally Park,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE ASHBY
Taubman and Dunn, JJ., concur

Announced November 17, 2016

James T. Reed, Denver, Colorado, for Plaintiff-Appellant

Hall & Evans, LLC, Ryan L. Winter, Bryan Gogarty, Conor P. Boyle, Denver, Colorado, for Defendant-Appellee

¶ 1    Plaintiff, Trina McGill, appeals the trial court's judgment entered on jury verdicts in favor of defendant, DIA Airport Parking LLC (DIA).  McGill challenges the trial court's admission of evidence of her character for truthfulness.  We conclude that neither invited error nor waiver precludes our review of her argument, but she is not entitled to relief.  We therefore affirm.

## I. Background

¶ 2    McGill filed a negligence claim against DIA based on her allegation that the side-view mirror of a DIA shuttle bus struck her in the head.

¶ 3    Approximately twenty years before trial, McGill was convicted of bank fraud for check kiting.[1]  Before trial in her negligence case, she moved to exclude evidence of her conviction and the underlying conduct.  She argued that the underlying conduct was inadmissible under both CRE 608(b) and CRE 403.  The trial court denied McGill's motion and ruled that the underlying conduct was

---

[1] In the trial court record, "check kiting" was defined as "[writing] checks from one bank to another bank knowing that the funds were not in that bank account . . . and the purpose of check kiting is to falsely inflate the balance of a checking account in order to allow written checks that ordinarily would bounce to clear."  We will refer to "check kiting" as check fraud throughout the opinion.

admissible under CRE 608(b).  Despite its ruling that the evidence was admissible, the court did not explicitly conduct a CRE 403 analysis in its written order.

¶ 4    At trial, anticipating that the evidence would be elicited by DIA on cross-examination, McGill's counsel questioned her about the conduct underlying her conviction on direct examination.  DIA also briefly questioned McGill about it on cross-examination.

¶ 5    The jury returned a verdict in favor of DIA, and the trial court entered judgment accordingly.

¶ 6    On appeal, McGill argues that the trial court erred by admitting the check fraud evidence under both CRE 608(b) and 403.  DIA argues that McGill may not challenge the admissibility of that evidence on appeal because by first introducing it herself, she invited any error in admitting the evidence.

¶ 7    We conclude that neither invited error nor waiver precludes McGill from challenging the admission of the evidence on appeal. But, addressing the merits of her argument, we conclude that the trial court properly admitted the check fraud evidence.

## II. McGill May Challenge the Court's Pretrial Ruling on Appeal

¶ 8 DIA argues that because McGill, not DIA, first introduced the check fraud evidence at trial, she invited any error and is precluded from appealing the trial court's order admitting this evidence. We disagree.

¶ 9 Invited error rests on the principle that "a party may not complain on appeal of an error that he has invited or injected into the case; he must abide the consequences of his acts." *People v. Rediger*, 2015 COA 26, ¶ 52 (quoting *People v. Zapata*, 779 P.2d 1307, 1309 (Colo. 1989)) (*cert. granted* Feb. 16, 2016). The doctrine "prevents a party from inducing an inappropriate or erroneous [ruling] and then later seeking to profit from that error." *Id.* (alteration in original) (quoting *Horton v. Suthers*, 43 P.3d 611, 618 (Colo. 2002)).

¶ 10 Invited error applies when a party expressly acquiesces in a proposed action by the court or the opposing party, *see Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1384-85 (Colo. 1998), implicitly agrees with a trial court's rejection of the party's own tendered instruction, *see id.* at 1385, or expressly declines a trial court's offer to replace a juror with an alternate juror, *see*

*People v. Raglin*, 21 P.3d 419, 423 (Colo. App. 2000), *overruled on other grounds by Fain v. People*, 2014 CO 69.

¶ 11     Here, McGill did not expressly acquiesce in or implicitly agree with the trial court's ruling that the check fraud evidence was admissible.  Instead, the trial court ruled, over McGill's objection, that the evidence was admissible.  Based on this ruling, and her reasonable expectation that DIA would introduce the evidence on cross-examination to attack her character for truthfulness, McGill made the strategic decision to introduce the evidence first on direct examination to blunt its impact on the jury.  This decision, though willful and strategic, was not an express acquiescence in a proposed ruling nor was it an expression of agreement with the trial court's ruling.  Because McGill did not invite, inject, or induce the ruling that she seeks to challenge on appeal, the doctrine of invited error does not apply here.

¶ 12     Nor are we convinced that McGill waived her right to challenge the court's pretrial ruling.  "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'"  *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation omitted).  Waiver occurs

"when a defendant specifically removes claims from the trial court's consideration." *Rediger*, ¶ 54.

¶ 13 McGill filed a pretrial motion and specifically asked the court to exclude the impeachment evidence. Her attempt to counter the effect of the court's adverse ruling was not an intentional abandonment of her objection to the ruling. She therefore did not waive her right to challenge the ruling.

¶ 14 Apart from our analysis above, we recognize that the Supreme Court and courts in a number of other jurisdictions have addressed whether a party is precluded from challenging on appeal a ruling that impeachment evidence is admissible if, after objecting to that ruling, the party introduces the evidence on direct examination for strategic reasons. Our consideration of these cases does not alter our conclusion.

¶ 15 The Supreme Court has held that a party's preemptive admission of damaging evidence in the wake of an adverse ruling that the evidence is admissible constitutes waiver of the right to challenge that adverse ruling on appeal. Like the majority of courts in other states that have considered the Supreme Court's ruling, we decline to follow it.

¶ 16    In *Ohler v. United States*, 529 U.S. 753, 755 (2000), the trial court ruled at the beginning of trial that Ohler's prior felony drug conviction was admissible to impeach her.  Rather than wait for the damaging evidence to be admitted on cross-examination, Ohler introduced the prior conviction during her direct examination.  *Id.* The Supreme Court held that, by testifying to the conviction on direct examination, Ohler waived her right to challenge on appeal the court's order that the conviction was admissible.[2]  *Id.* at 759.

¶ 17    *Ohler* is "not binding on state courts because the waiver issue does not implicate federal constitutional principles."  *Cure v. State*, 26 A.3d 899, 908 (Md. 2011); *see State v. Gary M.B.*, 661 N.W.2d 435, 440 (Wis. Ct. App. 2003), *aff'd*, 676 N.W.2d 475 (Wis. 2004).  And a majority of state courts that have considered *Ohler*'s holding have rejected it.  Instead, these courts have followed the reasoning of Justice Souter's dissent.  *See Cure*, 26 A.3d at 908-09 (collecting cases).

---

[2] Although *Ohler v. United States*, 529 U.S. 753 (2000), addressed the admission of a felony conviction and not, as here, the conduct underlying the conviction, we conclude that this difference is not legally significant.

¶ 18    Justice Souter's dissent asserts that the majority's decision was not supported by "precedent, the rules of evidence, or the reasonable objectives of trial"; failed to adequately consider the truth-seeking purpose of the rules of evidence; and fosters unfairness at trial. *Ohler*, 529 U.S. at 760-62 (Souter, J., dissenting); *see also Cure*, 26 A.3d at 908.

> It is true that when convictions are revealed only on cross-examination, the revelation also warns the factfinder [about matters bearing on the defendant's credibility], but the timing of their disclosure may do more. The jury may feel that in testifying without saying anything about the convictions the defendant has meant to conceal them. The jury's assessment of the defendant's testimony may be affected not only by knowing that she has committed crimes in the past, but by blaming her for not being forthcoming when she seemingly could have been. Creating such an impression of current deceit by concealment is very much at odds with any purpose behind [Fed. R. Evid.] 609, being obviously antithetical to dispassionate factfinding in support of a sound conclusion. The chance to create that impression is a tactical advantage for the Government, but only in the majority's dismissive sense of the term; it may affect the outcome of the trial, but only if it disserves the search for truth.
>
> Allowing the defendant to introduce the convictions on direct examination thus tends to promote fairness of trial without depriving

7

the Government of anything to which it is entitled.

*Ohler*, 529 U.S. at 764 (Souter, J., dissenting).[3]

¶ 19     We agree with Justice Souter.  When a court overrules a party's objection to impeachment evidence, it is generally to that party's tactical advantage to introduce that evidence through her direct examination testimony.  Doing so may mitigate the unwarranted and unfair perception resulting from the evidence's introduction on cross-examination that the party is actively trying to conceal the evidence.  When a party has objected to the admission of the impeachment evidence, we conclude that it is unnecessary and unfair to force her to choose between preserving that objection for appeal and pursuing the most advantageous trial strategy.  We see no justification to impose such a Hobson's choice.

¶ 20     We also agree with Justice Souter's dissent that forcing such a choice is inconsistent with the truth-seeking purpose of our own rules of evidence.  CRE 102 provides that the purpose of the rules of evidence is "to secure fairness in administration, elimination of

---

[3] Colorado has no comparable rule to Fed. R. Evid. 609.  Section 13-90-101, C.R.S. 2016, serves a similar purpose of defining when criminal convictions may be admitted to impeach a witness.

unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Forcing a party to forego the most appropriate trial strategy and create the perception that she is trying to conceal impeachment evidence in order to preserve the right to appeal a ruling to which she has already fully objected is unfair and advances no truth-seeking or other legitimate purpose.

¶ 21 Nor does the *Ohler* majority's rule further the purpose of CRE 608(b). The purpose of this rule is to allow specific instances of conduct to be admitted to impeach a witness's character for truthfulness. Such evidence allows the jury to evaluate the witness's capacity for truthfulness as the rule provides. *See* CRE 608(b). But which party introduces the impeachment evidence is irrelevant to the rule's purpose. *See Ohler*, 529 U.S. at 764 (Souter, J., dissenting).

¶ 22 We therefore conclude that McGill may challenge the admissibility of the impeachment evidence on appeal, and we now consider the merits of her challenge.

## III. Trial Court Properly Admitted the Check Fraud Evidence

### A. CRE 608(b)

¶ 23     McGill argues that the trial court erred by admitting the underlying facts of her check fraud conviction under CRE 608(b) because the fact that she passed bad checks many years ago was not probative of her character for truthfulness.  We disagree.

¶ 24     We review a trial court's evidentiary decisions for abuse of discretion.  *People v. Segovia*, 196 P.3d 1126, 1129 (Colo. 2008).  A trial court abuses its discretion by admitting evidence if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.  *Id.*

¶ 25     CRE 608(b) provides that specific instances of a witness's conduct that are probative of the witness's character for truthfulness or dishonesty may be used to impeach the credibility of that witness on cross-examination.  The conduct may not be proved by extrinsic evidence, but the witness may be asked about the conduct on cross-examination.  CRE 608(b); *see Segovia*, 196 P.3d at 1130.

¶ 26     To determine whether specific conduct is probative of untruthfulness, we consider the nature of the conduct, rather than

any elemental test for the criminal offense. *See Segovia,* 196 P.3d at 1132. Where a person takes property from another for his or her own benefit, that behavior is untruthful and dishonest; "[s]uch behavior reflects on one's truthfulness because a person who stole from another may be more inclined to obtain an advantage for herself by giving false testimony." *Id.* Similarly, acts involving fraud are probative of a witness's character for truthfulness. *See People v. Caldwell,* 43 P.3d 663, 670-71 (Colo. App. 2001) (witness's involvement in insurance fraud would be admissible under CRE 608(b)).

¶ 27    McGill admitted that she may have passed between six and ten bad checks. She admitted that the purpose of passing the checks was to obtain money to which she was not entitled by writing checks on accounts that she knew did not have sufficient funds to cover the checks. She purposefully moved funds from one account to another to hide her fraudulent behavior. And the total amount of the fraudulent activity totaled just over nine thousand dollars. Because the check fraud involved taking property that was not hers in a fraudulent manner, we conclude that the trial court

11

did not abuse its discretion by ruling that this was evidence of McGill's character for truthfulness.

¶ 28     McGill also argues that the check fraud evidence was not probative of her character for truthfulness because the number of checks involved was small and the conduct occurred a long time ago.  But facts that may lessen the degree to which the conduct is probative of a defendant's current character for truthfulness, such as the low value of the item taken or how long ago the conduct occurred, go to the weight of the evidence, not its admissibility.  *See* *Segovia*, 196 P.3d at 1132 (Facts that may "lessen the blame attached to the act" go "to the weight given the evidence by the jury, rather than to its admissibility.").

## B. CRE 403

¶ 29     Finally, McGill argues that the trial court erred by failing to evaluate whether the evidence was admissible under CRE 403.  That rule provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, among other things.  CRE 403.

¶ 30     The trial court did not specifically address CRE 403 in its written order.  Nor did it explicitly discuss the probative value of the

evidence and weigh that against any prejudicial effect. However, McGill argued that the evidence was inadmissible under CRE 403 in her motion, and DIA responded to this argument in its response. Based on this record, we conclude that the court's ruling implicitly found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See People v. Harris*, 633 P.2d 1095, 1098 (Colo. App. 1981) ("Where, as here, the objecting party expressly raises the question of prejudice and the trial court nevertheless admits the evidence, it cannot reasonably be assumed that the court neglected to weigh that factor. Under such circumstances, rather, the decision to admit the evidence speaks for itself concerning the court's discretionary conclusion as to probativeness-versus-prejudice.").

¶ 31    We acknowledge that it would have been helpful for the court to address CRE 403 in its written order. However, the fact that it did not do so does not compel the conclusion that it failed to conduct such an analysis at all. We therefore conclude that the trial court acted within its discretion by admitting the evidence.[4]

---

[4] We do not address whether the evidence was admissible under CRE 403 because, surprisingly, McGill did not argue on appeal that

13

## IV. Conclusion

¶ 32     The judgment is affirmed.

JUDGE TAUBMAN and JUDGE DUNN concur.

---

it was inadmissible under the rule. She argued only that the trial court erred by failing to conduct a CRE 403 analysis and asked that we remand to the trial court for it to do so. And we address only the arguments that an appellant raises in its opening brief. *See Casserly v. State*, 844 P.2d 1275, 1278 (Colo. App. 1992).