The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 5, 2019

## 2019COA138

**No. 16CA1057, *Peo v. Marx* — Crimes — Sexual Assault; Evidence — Opinions and Expert Testimony — Testimony by Experts**

A division of the court of appeals decides that an expert witness in a sexual assault case may not testify on the percentage of children and teenagers who fabricate allegations of sexual abuse, the percentage of girls who are sexually abused by family members, and the percentage of women who have been sexually assaulted. The division further decides that, to obtain an evidentiary hearing under Colorado's rape shield statute, § 18-3-407, C.R.S. 2018, a defendant need not prove that the accuser's prior allegations of sexual assault were "false in fact," but, rather, that the defendant could establish at the hearing the falsity of the prior allegations by a preponderance of the evidence.

COLORADO COURT OF APPEALS     **2019COA138**

Court of Appeals No. 16CA1057
La Plata County District Court No. 14CR457
Honorable William L. Herringer, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Edmund Peter Marx,

Defendant-Appellant.

JUDGMENT REVERSED

Division IV
Opinion by JUDGE LIPINSKY
Román, J., concurs
J. Jones, J., specially concurs

Announced September 5, 2019

Philip J. Weiser, Attorney General, Elizabeth Ford Milani, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Stephen Arvin, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

## I.     Introduction

¶ 1      Sexual assault cases are particularly difficult given the need to balance the rights of the victim against those of the accused.  *See State v. Boisvert,* 400 A.2d 48, 51 (N.H. 1979).  The law must weigh the consequences of invading the accuser's privacy and the related risk that sexual assaults may go unreported if victims fear embarrassment or intimidation.  At the same time, the defendant's rights to a fair trial and to challenge the credibility and veracity of the accuser must be protected.

¶ 2      The Colorado General Assembly, like other legislatures throughout the United States, enacted a rape shield statute § 18-3-407, C.R.S. 2018 (the Rape Shield Statute) to strike this balance.

¶ 3      This case presents that dilemma.  We must decide whether the trial court properly balanced a defendant's efforts to challenge the truthfulness of the accuser against the prosecutor's evidence bolstering the accuser's credibility.  We conclude that it did not.

¶ 4      Defendant, Edmund Peter Marx, appeals his convictions of sexual assault on a child (position of trust as part of pattern of abuse), sexual assault on a child (position of trust), and aggravated

incest. The accuser alleged that Marx had sexually assaulted her on multiple occasions when she was a teenager.

¶ 5     Marx's defense focused on the accuser's alleged lack of credibility. The prosecutor responded by calling an expert witness to provide opinions on the likelihood that a child or teenager will falsely report a sexual assault and the prevalence of sexual assault.

¶ 6     Marx contends that the trial court erred by:

- allowing the prosecutor to introduce expert testimony on the percentage of children and teenagers who fabricate allegations of sexual abuse, the percentage of girls who are sexually abused by family members, and the percentage of women who have been sexually assaulted;

- excluding a neighbor's testimony challenging the accuser's truthfulness; and

- rejecting the defense's request for an evidentiary hearing under the Rape Shield Statute, to determine whether Marx could introduce at trial evidence of the accuser's purported history of falsely accusing schoolmates of sexual assault.

¶ 7     We hold that Marx is entitled to a new trial because the trial court erred by permitting the prosecutor's expert to provide the statistical opinions; that the trial court correctly excluded the neighbor's testimony; and that the trial court erred by not conducting a hearing on the admissibility of Marx's evidence allegedly showing that the accuser had falsely reported sexual assaults.

## II.     The Trial Court Erred in Admitting the Expert's Statistical Testimony

### A.     The Expert's Opinions on Sexual Assault Statistics

¶ 8     The prosecutor called Sheri Vanino as an expert on "sexual assault victim behavior." The trial court accepted her as an expert. Vanino told the jury that "between 2 and 8 percent of sexual assaults that are reported to the police turn out to be false. For a child . . . the studies are more around 2 to 6 percent, child or teen . . . ." She further testified that sexual assault is "not at all rare. One in four women are [sic] sexually assaulted in a lifetime, most of whom are sexually assaulted under the age of 18." She noted that "somewhere around 50 percent of children . . . are abused by a family member."

3

## B. Standard of Review

¶ 9 We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *Kutzly v. People*, 2019 CO 55, ¶ 8, 442 P.3d 838, 841. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues the law. *People v. Salas*, 2017 COA 63, ¶ 30, 405 P.3d 446, 453.

¶ 10 The parties dispute whether Marx preserved his objections to Vanino's opinion testimony. We need not decide the preservation issue, however, because we hold that the testimony was improper even under the plain error standard of review.

¶ 11 Plain error is error that is obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120. An error is "obvious" if the challenged action contravened a clear statutory command, a well-settled legal principle, or Colorado case law. *People v. Pollard*, 2013 COA 31M, ¶ 40, 307 P.3d 1124, 1133. A "substantial" error is one that so undermined the fundamental fairness of the trial itself as to cast "serious doubt on the reliability of the judgment of conviction." *Id.* at ¶ 43, 307 P.3d at 1133 (quoting *Hagos*, ¶ 14, 288 P.3d at 120).

4

¶ 12    "Because this standard was formulated to permit an appellate court to correct 'particularly egregious errors,' the error must impair the reliability of the judgment of conviction to a greater degree than under harmless error to warrant reversal."  *Hagos*, ¶ 14, 288 P.3d at 120 (quoting *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987)).

### C.    Expert Testimony on Whether Children Tend to Fabricate Sexual Abuse Allegations and the Likelihood of Becoming a Victim of Sexual Assault

¶ 13    An expert witness may provide opinion testimony so long as "the expert's specialized knowledge will assist the jury in understanding the evidence or in determining a fact in issue."  *People v. Mintz,* 165 P.3d 829, 831 (Colo. App. 2007).  An expert may not opine on a witness's credibility or that a witness was telling the truth on a specific occasion.  *People v. Wittrein*, 221 P.3d 1076, 1081 (Colo. 2009) (citing *People v. Eppens*, 979 P.2d 14, 17 (Colo. 1999)); *see United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998) ("Testimony regarding a witness' credibility is prohibited unless it is admissible as character evidence.").

¶ 14    Thus, "experts may not offer their direct opinion on a child victim's truthfulness or their opinion on whether children tend to fabricate sexual abuse allegations."  *Wittrein*, 221 P.3d at 1081.

Expert testimony that children tend not to fabricate stories of sexual abuse is "tantamount to [an expert] testifying that [a] child victim was telling the truth about her allegations." *Id.* at 1082 (citing *People v. Snook*, 745 P.2d 647, 648 (Colo. 1987)).

¶ 15    Although expert testimony is not permitted to bolster a victim's credibility, an expert may testify concerning whether a sexual assault victim's behavior or demeanor was consistent with the typical behavior of victims of abuse. *People v. Glasser*, 293 P.3d 68, 78 (Colo. App. 2011). This type of testimony is admissible because it assists the jury in understanding the victim's behavior after the incident and explains why the victim acted the way he or she did. *People v. Relaford*, 2016 COA 99, ¶ 28, 409 P.3d 490, 496. "Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation . . . is helpful and appropriate in cases of sexual abuse of children . . . ." *Id.* (quoting *People v. Whitman*, 205 P.3d 371, 383 (Colo. App. 2007)). Although this type of testimony "necessarily carrie[s] with it the implication that the child's report of sexual abuse was true," it is proper expert testimony because it "aid[s] the jury in understanding the typicality

of reactions by young [victims] who have been subjected to sexual abuse that might, under other circumstances, be considered bizarre." *Id.* at ¶ 30, 409 P.3d at 496 (quoting *People v. Morrison*, 985 P.2d 1, 6 (Colo. App. 1999)).

¶ 16    The admissibility of opinion testimony that assists the jury in understanding a victim's behavior, however, does not mean "that testimony of general characteristics of any type is admissible to attack or support a witness's credibility." *Id.* at ¶ 31, 409 P.3d at 496 (quoting *People v. Cernazanu*, 2015 COA 122, ¶ 20, 410 P.3d 603, 606-07). Rather, opinion testimony of general characteristics is admissible only if it "(1) relates to an issue apart from credibility and (2) only incidentally tends to corroborate a witness's testimony." *Id.*

D.    The Expert's Testimony on Whether Children and Teenagers Tend to Fabricate Sexual Abuse Allegations Was an Impermissible Expert Opinion

¶ 17    Vanino's testimony regarding the small percentage of children and teenagers who make false allegations of sexual assault improperly bolstered the accuser's credibility. Vanino's opinion that only two to six percent "of sexual assaults that are reported to the police [by children and teenagers] turn out to be false" did not relate

7

to any issue other than the accuser's truthfulness. The practical result of Vanino's testimony was to suggest to the jury that the accuser was "almost certainly telling the truth." *See Snook*, 745 P.2d at 649.

¶ 18      Vanino could have explained the typical demeanor and behavioral traits of a sexually abused child or teenager, which would have allowed the jury to gain a better understanding of the accuser's actions after Marx allegedly sexually assaulted her. *See Relaford*, ¶ 32, 409 P.3d at 496; *cf. Morrison*, 985 P.2d at 6 ("[S]ubstantially all of th[e] expert's testimony was properly received . . . to aid the jury in understanding the typicality of reactions by [children] who have been subjected to sexual abuse."). This type of testimony would not have told the jurors what result to reach and thus would have been permissible. *See Relaford*, ¶ 33, 409 P.3d at 496.

¶ 19      But Vanino's testimony about the percentage of children and teenagers who fabricate sexual assault allegations did not serve any purpose other than to attempt to influence the jurors' determination of the accuser's credibility. *See id.* at ¶ 34, 409 P.3d at 496; *see also Snook*, 745 P.2d at 649 ("[T]he jury's only conceivable use of

8

[the] testimony would be as support for the [victims'] truthful character[s]."). The testimony did not aid the jury in deciding the case because it did not provide information whether, *in this case*, the allegations of sexual assault were truthful. *See Relaford*, ¶ 31, 409 P.3d at 496.

      E.    The Expert's Testimony on the Likelihood of Becoming a Victim of Sexual Assault Was Also Impermissible

¶ 20    Similarly, the trial court should not have allowed Vanino to testify regarding the percentages of women and children who are victims of sexual assault. Vanino's testimony that "[o]ne in four women are [sic] sexually assaulted in a lifetime, most of whom are sexually assaulted under the age of 18," and that "around 50 percent of children . . . are abused by a family member," was irrelevant because it did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.

¶ 21    The testimony was also inadmissible to the extent it suggested to the jury that the accuser's claims were truthful because of the percentage of females under the age of eighteen who are sexually

9

assaulted. *See Snook*, 745 P.2d at 649. Telling the jury that one in four females is sexually assaulted and that fifty percent of children are abused by family members could have served no purpose other than to attempt to influence the jurors' credibility determination. *See Relaford*, ¶ 34, 409 P.3d at 496.

## F.    Conclusion

¶ 22    The trial court erred in allowing Vanino to testify that children and teenagers rarely fabricate allegations of sexual abuse and regarding the incidence of sexual abuse. The error was "obvious" in light of the well-settled case law that experts may not offer opinions on a witness's credibility. *See Pollard*, ¶ 41, 307 P.3d at 1133 (holding that an error was obvious "[i]n light of the well-settled legal principle upon which [the] rule is based, the prior references in Colorado case law to the rule, and the uniformity with which numerous other courts have embraced the rule"). And the trial court's error in allowing Vanino to offer her statistical opinions was "substantial" because it undermined Marx's defense premised on the accuser's alleged lack of credibility. *See id.* at ¶ 42, 307 P.3d at 1133 (concluding that error was "substantial" because it created serious doubt regarding the reliability of the judgment of

10

conviction). The accuser's credibility was particularly critical because the prosecution introduced no physical evidence of the alleged sexual assaults, the accuser and Marx were the only witnesses to the incidents, and Marx recanted his confession.

¶ 23   Thus, the trial court's error in admitting Vanino's statistical opinions requires reversal of Marx's judgment of conviction, whether under plain error or another standard of review.

### III. The Trial Court Correctly Excluded the Neighbor's Testimony Regarding the Accuser's Alleged Character for Untruthfulness

#### A. The Neighbor's Testimony

¶ 24   Marx sought to introduce testimony from a neighbor regarding the accuser's alleged character for untruthfulness. The neighbor said he had known the accuser and her family for more than twenty years, and that Marx had worked for the neighbor at his ranch. (The neighbor's testimony was video-recorded because he was unavailable at trial.)

¶ 25   The neighbor's testimony focused on the accuser's behavior. He said the accuser had "created incidents" while at the neighbor's ranch. Specifically, he said the accuser had antagonized the

11

neighbor's dogs by bringing cats onto the property and had gotten in her father's way while he was working to gain his attention.

¶ 26    The neighbor said his opinion about the accuser's alleged lack of truthfulness was based, in part, on her denial that she had mistreated the dogs. He did not provide any other examples of the accuser's false statements. Although the neighbor characterized the accuser as "untruthful" and "untrustworthy," he refused to call her a "liar."

¶ 27    The trial court ruled that the defense could not introduce the neighbor's testimony that the accuser was "sneaky and attention seeking," had abused animals, or was "untrustworthy." The trial court, however, initially allowed the neighbor's opinion testimony regarding the accuser's character for untruthfulness.

¶ 28    The scope of the neighbor's testimony shrank further during trial. The prosecutor sought permission to remove his entire cross-examination from the portions of the video shown to the jury. The court granted the prosecutor's request. The court reasoned that the neighbor's statements about the accuser's alleged lack of truthfulness were intertwined with his inadmissible testimony regarding her mistreatment of the dogs. By authorizing the

redaction of the cross-examination, the trial court removed from the portion of the video shown to the jury all of the neighbor's references to the accuser's lack of truthfulness.

¶ 29　Because, at retrial, Marx may again seek to introduce the neighbor's testimony regarding the accuser's alleged untruthfulness, we consider whether the trial court erred in excluding that testimony.

## B.　Standard of Review

¶ 30　We review the trial court's decision to exclude evidence for an abuse of discretion. *Salas*, ¶ 30, 405 P.3d at 453. However, we review de novo a trial court's interpretation of a statute or rule governing the admissibility of evidence. *Id.*

## C.　Evidence of a Witness's Character for Untruthfulness

¶ 31　A witness's credibility may be attacked through character evidence under CRE 608, which states, in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the character for truthfulness or untruthfulness of another

13

witness as to which character the witness being cross-examined has testified . . . .

CRE 608(b)(2). "The purpose of [the] rule is to allow specific instances of conduct to be admitted to impeach a witness's character for truthfulness. Such evidence allows the jury to evaluate the witness's capacity for truthfulness as the rule provides." *McGill v. DIA Airport Parking, LLC*, 2016 COA 165, ¶ 21, 395 P.3d 1153, 1157. The evidence must address the witness's truthful character, and not focus on her veracity on a particular occasion. *People v. Koon*, 724 P.2d 1367, 1370 (Colo. App. 1986). Also, "the trial court should exclude evidence that has little bearing on credibility, places undue emphasis on collateral matters, or has the potential to confuse the jury." *People v. Knight*, 167 P.3d 147, 153 (Colo. App. 2006).

### D. The Neighbor's Testimony Regarding the Accuser's Alleged Untruthfulness Was Inadmissible

¶ 32 The trial court correctly excluded the neighbor's statements about the accuser's alleged untruthfulness for three reasons.

¶ 33 First, the testimony focused on issues having nothing to do with credibility. It primarily rested on the accuser's behavior towards the neighbor's dogs and her interference with her father's

14

work at the neighbor's ranch.  The neighbor provided only one example of the accuser's alleged untruthfulness: when asked what she was doing to the dogs, she responded, "Oh, nothing" and "pretend[ed] as if nothing happened."  And because the neighbor could point to only a single instance of the accuser's alleged untruthfulness, his testimony did not speak to her character generally.  *See Koon*, 724 P.2d at 1370.

¶ 34     Second, the neighbor's testimony about the accuser was of dubious relevance.  He admittedly could only speculate "as to how she is today," as he had not seen the accuser since she was fourteen — two years before Marx allegedly sexually assaulted her.  And the neighbor's statements about the accuser's untruthfulness were equivocal.  At least twice he denied the accuser was a "liar," although he called her "untruthful, deceitful, and manipulative." the neighbor did not explain why he believed she was not a liar, or the distinction in his mind between lying and being untruthful.

¶ 35     Third, a child's assertion that she was "doing nothing" when confronted about misbehavior is not probative of a character for untruthfulness.  It is not the type of falsehood that is admissible evidence of a character for untruthfulness under Rule 608.  To hold

otherwise would invite a flood of testimony attacking witnesses who, when children, had engaged in nothing more sinister than the time-worn meaningless exchange: "What did you do?  Nothing." *See, e.g.*, Robert Paul Smith, *Where Did You Go?  Out.  What Did You Do?  Nothing.* (1957).  Similarly, testimony that a witness looked guilty by "pretend[ing] as if nothing happened" is "not a direct or even indirect comment on defendant's character for truthfulness or untruthfulness, nor . . . a comment on his truthfulness on a particular occasion."  *People v. Acosta,* 2014 COA 82, ¶ 72, 338 P.3d 472, 485.

## E.    Conclusion

¶ 36    For these reasons, we conclude that the neighbor's testimony does not satisfy the test for admitting evidence of a witness's character for untruthfulness.

### IV.   The Trial Court Erred in Not Conducting a Hearing on the Admissibility of the Evidence of the Accuser's Alleged History of False Accusations of Sexual Assault

#### A.    Marx's Offer of Proof of Evidence Regarding the Accuser's Alleged Prior False Accusations of Sexual Assault

¶ 37    Marx filed a pretrial motion under subsection (2) of the Rape Shield Statute for a hearing on the admissibility of evidence

16

allegedly showing that the accuser had a history of making false accusations of sexual assault. In support of the motion, Marx made an offer of proof through an affidavit of Grady King, an investigator at the Durango Regional Office of the Colorado State Public Defender (the Affidavit). The Affidavit described the accuser's alleged false reports of sexual assault against classmates.

¶ 38 The trial court concluded that the Affidavit "does not establish by a preponderance of the evidence that [the accuser's past] allegations were false in fact and based upon that, I don't think that the Court is required to hold an evidentiary hearing."

¶ 39 Although the court referred to the preponderance of the evidence standard for establishing the admissibility of evidence showing that a victim has a history of false accusations of sexual assault, it did not apply that standard. Rather, the court required Marx to surmount an "incredibly high hurdle" to prove entitlement to a hearing on the admissibility of the evidence of the accuser's alleged false accusations:

> [T]he question is did the defense demonstrate
> to the Court through its offer of proof in the
> affidavit by a preponderance of the evidence
> that the prior allegations are false in fact,
> which . . . I think it's an incredibly high hurdle

17

> that the legislature has set, but . . . I think there's probably also good reason . . . for the legislature setting the hurdle that high, and that's the standard that the Court has to follow.

So, the court concluded, without conducting a hearing, that Marx could not introduce evidence of the accuser's alleged history of false reports of sexual assault. (The trial court allowed Marx to present other evidence attacking the accuser's credibility. That evidence is not an issue in this appeal.)

## B. Standard of Review

¶ 40 We review a trial court's determination of the admissibility of evidence under the Rape Shield Statute for an abuse of discretion. *People v. Lancaster*, 2015 COA 93, ¶ 35, 373 P.3d 655, 661 (citing *People v. Cook*, 2014 COA 33, ¶ 34, 342 P.3d 539, 547). But, as noted above, we review questions of statutory interpretation de novo. *See People v. Golden*, 140 P.3d 1, 4 (Colo. App. 2005) (holding that a trial court's interpretation of the Rape Shield Statute is reviewed de novo).

### C. Offers of Proof and Evidentiary Hearings Under the Rape Shield Statute

¶ 41    Under the Rape Shield Statute, evidence of specific instances of a victim's prior sexual conduct are "presumed to be irrelevant" to the criminal trial. § 18-3-407(1); *see People v. Weiss*, 133 P.3d 1180, 1185 (Colo. 2006). By limiting "fishing expeditions" into a victim's sexual history, the Rape Shield Statute advances the policy goal of protecting victims from humiliating and public exposure of intimate details of their lives absent a "preliminary showing that evidence thus elicited will be relevant to some issue in the pending case." *People v. McKenna*, 196 Colo. 367, 371-72, 585 P.2d 275, 278 (1978). Defendants in sexual assault cases do not have a due process right to introduce "irrelevant and inflammatory evidence." *People v. Schmidt*, 885 P.2d 312, 315 (Colo. App. 1994).

¶ 42    The Rape Shield Statute includes several exceptions to the presumption that evidence of a victim's sexual activities is inadmissible. *Lancaster*, ¶ 36, 373 P.3d at 661. Under the exception relevant to this case, "evidence that the victim . . . has a history of false reporting of sexual assaults" is admissible, but only if the evidence is relevant and material, and the defendant follows

the procedure set forth in the Rape Shield Statute for admission of the evidence. § 18-3-407(2); *see Lancaster*, ¶ 36, 373 P.3d at 661.

¶ 43    The Rape Shield Statute requires a two-part procedure for determining whether a defendant charged with sexual assault may introduce evidence of the victim's alleged history of falsely reporting sexual assaults. First, the defendant must make an offer of proof through a written motion and a supporting affidavit. § 18-3-407(2)(a). The affidavit "must articulate facts which, if demonstrated at the evidentiary hearing by a preponderance of the evidence, would show that the alleged victim made multiple prior or subsequent reports of sexual assault that were in fact false." *Weiss*, 133 P.3d at 1182.

¶ 44    Second, if the court finds that the defendant's offer of proof is sufficient, the defendant is entitled to an in camera pretrial evidentiary hearing on the admissibility of the evidence of the alleged false reporting.

¶ 45    These procedures

> protect the victim's privacy; allow the accused
> person to explore facts; enable the trial judge
> to determine in a pretrial hearing what shall be
> admitted or excluded at trial; and serve the
> state's interest in prosecuting those accused of

> sexual assault while affording defendants a
> fair opportunity to confront their accusers.

*Id.* at 1186.

## 1. The Offer of Proof

¶ 46 An offer of proof under the Rape Shield Statute is a preview of the evidence a party is prepared to introduce at an evidentiary hearing. It consists of allegations that the party's attorney represents would be proven if the court granted the hearing. *State v. Martinez*, 991 A.2d 1086, 1094 (Conn. 2010). The purposes of an offer of proof include "inform[ing] the court of the legal theory under which the evidence is admissible," advising "the trial judge of the specific nature of the evidence so that the court can judge its admissibility," and creating "a record for appellate review." *Id.* (quoting *State v. Payne*, 917 A.2d 43, 49 n.5 (Conn. App. Ct. 2007)); *see Itin v. Ungar*, 17 P.3d 129, 136 (Colo. 2000) ("An offer of proof must sufficiently inform the court of the nature and substance of the proposed evidence both to enable the trial court to exercise its discretion under the rules of evidence and to provide a basis for appellate review."); CRE 103(a)(2) ("In case the ruling is one excluding evidence, the substance of the evidence was made known

to the court by offer or was apparent from the context within which questions were asked").

¶ 47   An offer of proof under the Rape Shield Statute typically consists of a witness's anticipated testimony, an explanation of the purpose and relevance of the testimony, and a recitation of the facts necessary to establish the testimony's admissibility. *Weiss*, 133 P.3d at 1186-87. The defendant must "justify the trial court holding an evidentiary hearing for the purpose of ascertaining whether the alleged victim made multiple sexual assault reports that were demonstrably false." *Id.* at 1189.

¶ 48   Thus, a defendant is entitled to an evidentiary hearing under the Rape Shield Statute if the proposed evidence would be sufficient to establish, "by a preponderance of the evidence, at the in camera evidentiary hearing that the alleged victim made multiple reports of prior or subsequent sexual assault that were in fact false." *Id.* at 1188. If the defendant does not satisfy this burden, the evidence of the prior sexual assault claims is "irrelevant, immaterial, and inadmissible in the case at trial." *Id.* at 1189.

¶ 49   The preponderance of the evidence standard applies in determining preliminary questions regarding the admissibility of

evidence. *Vasquez v. People*, 173 P.3d 1099, 1105 (Colo. 2007). This standard directs the court to decide whether the existence of a contested fact is "more probable than its nonexistence." *People v. Taylor*, 618 P.2d 1127, 1135 (Colo. 1980) (quoting *Page v. Clark*, 197 Colo. 306, 318, 592 P.2d 792, 800 (1979)). Proof "by a preponderance of the evidence" requires that the evidence must "preponderate over, or outweigh, evidence to the contrary." *City of Littleton v. Indus. Claim Appeals Office*, 2016 CO 25, ¶ 37, 370 P.3d 157, 158 (quoting *Mile High Cab, Inc. v. Colo. Pub. Utils. Comm'n*, 2013 CO 26, ¶ 14, 302 P.3d 241, 246). It is not "an especially high degree of proof." *Id.* at ¶ 38, 370 P.3d at 168.

¶ 50    Further, a defendant cannot introduce evidence of the victim's purported history of false allegations of sexual assault under the Rape Shield Statute unless the proposed evidence would establish "that the alleged victim made multiple prior or subsequent reports of sexual assault." *Weiss*, 133 P.3d at 1182. A single false report is not a "history of false reporting of sexual assaults." *Id.* at 1187 (concluding that "the word 'history' means '[a]n established record or pattern of behavior'" (quoting American Heritage Dictionary of the English Language 833 (4th ed. 2000))).

23

## 2. The Evidentiary Hearing

¶ 51    If the defendant makes a sufficient offer of proof under the Rape Shield Statute, at the subsequent evidentiary hearing, "to the extent the facts are in dispute, the court may allow the questioning of the victim or witness regarding the offer of proof made by the moving party or otherwise allow a presentation of the offer of proof, including but not limited to the presentation of witnesses." § 18-3-407(2)(c).

> At the conclusion of the hearing, . . . if the court finds that the evidence proposed to be offered . . . is relevant to a material issue to the case, the court shall order that evidence may be introduced and prescribe the nature of the evidence or questions to be permitted. The moving party may then offer evidence pursuant to the order of the court.

§ 18-3-407(2)(e).

### D.    Marx Was Entitled to a Hearing to Determine the Admissibility of Evidence of the Accuser's Alleged History of Falsely Reporting Sexual Assaults

¶ 52    The trial court applied the wrong standard in ruling that Marx had to surmount an "an incredibly high hurdle" to prove entitlement to a hearing under section 18-3-407(2). Although the court referred to the preponderance of the evidence standard, it did

24

not merely misapply that standard to the facts.  Rather, it held Marx to a different, higher standard.

¶ 53    Contrary to the trial court's ruling, Marx was not required to prove at the offer of proof stage that the accuser's prior allegations of sexual assault were "false in fact."  Rather, he needed only to show that, at an evidentiary hearing, he could establish the falsity of the accuser's prior accusations by the low preponderance of the evidence standard.  *Weiss*, 133 P.3d at 1189; *Taylor*, 618 P.2d at 1135; *Lancaster*, ¶ 40, 373 P.3d at 662.

¶ 54    Marx met his burden of proving entitlement to an evidentiary hearing on the admissibility of evidence of the accuser's alleged false reporting because the Affidavit satisfied the Rape Shield Statute's offer of proof requirement.  In the Affidavit, King made the following sworn statements, among others:

- The accuser alleged that S.M., a boy at her school, had sexually assaulted her at a public library.  The accuser told police that S.M.'s friends had been nearby and laughed during the assault.  But, when asked, the accuser could not provide the names of any of those friends.  Mike Jaramillo, one of the accuser's teachers,

did not believe the assault could have happened due to the number of students who would have observed it.

- Jaramillo told police that the accuser "makes up stories regularly" and that she had "accused another student of touching her on the bus" during a field trip, which "was investigated and found to be untrue." In a later interview, the accuser said she remembered "taking a field trip on a school bus . . . but doesn't remember telling any of her teachers that one of her classmates touched her inappropriately while they were on that bus."

- The accuser alleged that S.M. forced her to give him oral sex underneath the staircase at school and that S.M. "has had sex with her under the stairs at school." The accuser gave three different and contradictory accounts of these allegations to detectives and officers. Additionally, a school security specialist, Steve Kerchee, was unable to find any video footage of such incidents from the surveillance camera in the hallways where the sexual assaults had allegedly occurred.

- S.M. denied all of the accuser's allegations and told detectives "he did not do anything that [the accuser] said he did."

- Police saw text messages between the accuser and S.M., initiated by the accuser, after the first alleged sexual assault. In the first exchange, the accuser said, "hey this is [the accuser]" to which S.M. replied "hey." On another occasion, two days before school officials learned of the allegations of sexual assault, the accuser sent S.M. a text message asking how his orthodontist appointment went, to which S.M. did not respond. The messages made no reference to any sexual activity between the accuser and S.M.

- During an interview, the accuser provided contradictory information on the number of times and places where S.M. had allegedly sexual assaulted her.

- Jaramillo said during an interview that he never saw the accuser and S.M. together, or acting in a romantic way, and that "he was pretty sure that [the accuser's allegation] wasn't true."

- Following a police investigation into the accuser's allegations, a detective concluded there was "no evidence that a sexual assault occurred" and that, unless the investigators found evidence corroborating the accuser's claims, the detective would close the case.

¶ 55    In describing the instances of the accuser's alleged false reports of sexual assault, Marx did not rely only on general denials that the underlying sexual assaults had occurred, testimony that the accuser had made only a single false accusation, or evidence that the accuser's accusations had not resulted in the filing of charges. The Affidavit referenced other witnesses besides S.M. who were prepared to testify to the falsity of the accuser's accusations and the school's findings that the accuser had made false allegations of sexual assault.

¶ 56    This case is distinguishable from *Weiss*, where the motion requesting the evidentiary hearing rested solely on allegations that no charges had been brought as a result of the victim's reports of sexual assault. *Weiss*, 133 P.3d at 1188-89. In that case, the supreme court concluded that the lack of charges was an

insufficient offer of proof upon which a trial court could order an evidentiary hearing. *See id.*

¶ 57 In sum, we conclude that the facts described in the Affidavit were sufficient to establish that Marx could demonstrate at an evidentiary hearing, by a preponderance of the evidence, the falsity of the accuser's multiple previous allegations of sexual assault. *See id.* at 1189; *see also State v. Manini*, 659 A.2d 196, 204 (Conn. App. Ct. 1995) (holding that the defendant's offer of proof, supported by medical records describing victim's sexualized prior delusions and hallucinations, was sufficient under the Rape Shield Statute to require the court to conduct an evidentiary hearing on the admissibility issue).

### E. Conclusion

¶ 58 The trial court erred in holding that Marx was not entitled to an evidentiary hearing under section 18-3-407(2) because he had not shown, under an "incredibly high hurdle" standard of proof, that the accuser's prior allegations of sexual assault were "false in fact."

¶ 59 Accordingly, we conclude that Marx is entitled to an evidentiary hearing under the Rape Shield Statute.

§ 18-3-407(2)(c). At the hearing, Marx will be required to prove, by a preponderance of the evidence, the facts set forth in the Affidavit allegedly showing that the accuser had made "multiple prior or subsequent reports of sexual assault [that] were in fact false." *See Weiss*, 133 P.3d at 1184.

## V. Remaining Contentions

¶ 60 In light of our disposition of this appeal, and because the remaining issues Marx raises on appeal may not recur in any retrial, we do not address Marx's other contentions of error.

## VI. Conclusion

¶ 61 The judgment of conviction is reversed and the case is remanded for further proceedings consistent with this opinion. On remand, the trial court is instructed to conduct an evidentiary hearing under section 18-3-407(2) to determine whether Marx can establish, by a preponderance of the evidence, that evidence of the accuser's alleged history of falsely reporting sexual assaults is admissible. We offer no opinion as to whether the evidence should or should not be ruled admissible.

JUDGE ROMÁN concurs.

JUDGE J. JONES specially concurs.

JUDGE J. JONES, specially concurring.

¶ 62    I agree with the ultimate conclusions reached by the majority on all issues.  I write separately only because I disagree with the majority's path to the result on one of those conclusions.

¶ 63    The majority determines that in ruling on Marx's motion under the rape shield statute, the district court "applied the wrong standard."  Given that the district court said it was applying the preponderance of the evidence standard — which is the right standard — I am uncomfortable with that determination, notwithstanding the language to which the majority points.  After all, compared to the usual test for admitting evidence — mere relevance — the statute does create a higher bar for admissibility.  I believe it is possible to read the district court's comments in that light.

¶ 64    Nonetheless, I believe that the district court misapplied the standard and that, for the reasons articulated by the majority, Marx is entitled to a hearing on his motion.