22CA1936 Peo v Ramirez 10-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1936
City and County of Denver District Court No. 19CR7143
Honorable Ericka F. H. Englert, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Saul Ramirez,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Lipinsky and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

Philip J. Weiser, Attorney General, Yaried A. Hailu, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Sean James Lacefield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Saul Ramirez, appeals his convictions on two counts of sexual assault on a child (position of trust) and two counts of sexual assault on a child (pattern of abuse).  He contends that the district court erred by (1) admitting expert testimony that improperly bolstered the victim's credibility and (2) allowing prosecutorial misconduct in closing argument.  We affirm.

## I.    Background

¶ 2    When she was in seventh grade, the victim reported to her school principal that Ramirez — her godfather — had raped her during a weekend visit to his home when she was ten years old.  An investigation followed, and though Ramirez denied the allegations, the prosecution charged him with two counts of sexual assault on a child (position of trust), two counts of sexual assault on a child (pattern of abuse), and two sentence enhancers.

¶ 3    According to the victim's trial testimony, Ramirez sexually assaulted her twice over the course of one weekend.  The first assault occurred when she was lying on a living room couch and Ramirez touched her "private part" underneath her underwear.  The second assault happened the next night in Ramirez's room.  The victim reported that Ramirez took off her pants and underwear,

1

spread her legs, licked her vagina, and put his penis in her vagina. The victim recalled that "it didn't feel good," and, after Ramirez left, she went to a bathroom to clean "white stuff" off her vagina.

¶ 4     The victim didn't tell anyone about the assaults at the time because Ramirez "threatened" that "bad things w[ould] happen to [her]" if she did.  She also explained that, although she used to spend almost every weekend at her godfather's house, she "would never go back" after the assaults.  The victim's mother confirmed that when the victim was in fifth grade, she "stopped asking" to go to her godfather's house.

¶ 5     Ramirez didn't testify at trial.  His counsel defended on the theory that Ramirez was falsely accused and that the victim had "create[d] this story" after watching a television show about a girl who disclosed to her mother that she had been sexually abused.

¶ 6     The jury convicted Ramirez as charged, and the district court sentenced him to eight years to life in prison.

## II.     Expert Testimony

¶ 7     Ramirez contends that the district court plainly erred by permitting an expert witness to testify — in direct response to a juror question — that "a very small percentage of children" will

knowingly make a "false accusation" about sexual abuse. Because we agree with the People that Ramirez invited this alleged error, we will not review it.

## A.     Additional Background

¶ 8     The prosecution presented a generalized expert in child sexual assault and trauma dynamics. The expert explained that she had not met the victim or Ramirez and that her role was to provide general information about child sexual assault and trauma responses. She testified about, among other things, why a child might delay disclosing sexual abuse.

¶ 9     During cross-examination, defense counsel asked the expert if she did "any work" on false accusations and whether she had training to determine whether an accusation could be false. He then asked whether she had ever followed up in the cases in which she had testified to determine whether the accuser "had made a false accusation" and "eventually recanted." The expert said she "do[es] not track that type of information."

¶ 10     At the end of cross-examination, jurors submitted a few questions for the expert, including, "How often do children lie about abuse to please another trusted adult like a godmother, someone

3

who is trying to separate from their spouse?"[1] The prosecutor and defense counsel each stated that they had "no objection" to the proposed question, and the court asked it.

¶ 11 In response to the question, the expert testified:

> So without speaking specifically to statistics, that there's certainly research around children and false allegations and whether or not children lie about something like sexual abuse.
>
> My experience and understanding of sexual abuse, even if it's related to the dynamics within a family, is that there are a very small percentage of children that will make an intentional accusation of another individual. Sometimes there is mitigating factors where another adult in the family misunderstands something, but the idea a child intentionally makes a false accusation and knowingly does so, the numbers are very, very small.

¶ 12 Defense counsel did not object to this response or ask that it be stricken. Instead, defense counsel questioned the expert further about the referenced false allegation research and revisited the expert's earlier statement that she did not review whether victims in cases in which she had testified had recanted.

---

[1] At trial, the jury heard Ramirez's recorded police interview, in which he explained that his wife — the victim's godmother — was divorcing him.

¶ 13     In closing argument, defense counsel argued that Ramirez had been falsely accused and pointed to the expert's testimony that false accusations occur and that the expert never investigated what happened in cases in which she testified.

### B.     Legal Principles and Standard of Review

¶ 14     While we generally review unpreserved issues for plain error, the doctrine of invited error precludes appellate review of alleged errors that a party injected into the case "deliberately and as a matter of trial strategy," as opposed to through oversight. *People v. Smith*, 2018 CO 33, ¶ 14; *People v. Rediger*, 2018 CO 32, ¶ 34; *see also People v. Garcia*, 2018 COA 180, ¶ 7 (noting that invited error "is limited to situations where an error was caused by a party's affirmative, strategic conduct and not by a party's inaction or inadvertence").

¶ 15     "[T]he doctrine is not limited to cases in which a party requests that the court take a particular action and then later complains of that same action." *Horton v. Suthers*, 43 P.3d 611, 619 (Colo. 2002). Rather, it also applies where one party expressly acquiesces to a proposed ruling or procedure. *See Rediger*, ¶¶ 34, 37; *see also Boothe v. People*, 814 P.2d 372, 377-78 (Colo. 1991)

(Lohr, J., concurring) (concluding that the invited error doctrine applied where the defense counsel acquiesced to the court's response to a jury question).

¶ 16    We review de novo whether invited error applies.  *People v. Becker*, 2014 COA 36, ¶ 20.

### C.    Ramirez Invited the Response to the Juror's Question

¶ 17    Despite not objecting to either the juror's question or the expert's response, Ramirez now asks us to reverse his convictions because he contends that the response was improper bolstering testimony.

¶ 18    While we generally agree that witnesses may not testify about the percentage of children who make false sexual abuse allegations, *see, e.g., People v. Marx*, 2019 COA 138, ¶ 17, by acquiescing to the question, defense counsel invited the testimony about which Ramirez now complains.  Indeed, the juror's question directly asked the expert to testify about "[h]ow often" children lie about sexual assault.  Defense counsel had the time and opportunity to review and object to that question.  But instead, he agreed to the question by confirming that he had "no objection" to it.  By doing so, he invited the expert's foreseeable response about the percentage of

children who make false sexual abuse allegations. *See People v. Wittrein*, 221 P.3d 1076, 1082 (Colo. 2009) (noting that error may be invited where an expert witness's "responses were a foreseeable result of the form of questioning"); *see also People v. Shackelford*, 511 P.2d 19, 20 (Colo. 1973) (any error in admitting a witness's testimony was invited by defense counsel's "wide-open question" to the witness).[2]

¶ 19 We disagree with Ramirez that this case is like *Marx*. There, a division of this court concluded that the district court plainly erred by allowing the *prosecutor* to elicit expert testimony that children generally do not lie about sexual abuse. *Marx*, ¶ 23. Unlike in *Marx*, the prosecutor in this case did not elicit improper expert testimony. Rather, defense counsel first introduced the topic of false accusations during his cross-examination of the expert and then expressly acquiesced to the juror's question seeking testimony about the frequency of false sexual abuse allegations.

---

[2] Because acquiescence is enough, we necessarily reject Ramirez's contention that invited error "is inapplicable" because defense counsel himself did not "inject" the error by asking the question.

7

¶ 20 To the extent that Ramirez contends defense counsel's acquiescence was not strategic, we disagree. After all, defense counsel defended on the theory that the victim had falsely accused Ramirez and pressed this theory throughout trial, from opening statement through closing argument. Thus, we can hardly conclude that the decision to cross-examine the expert witness about false accusations and then acquiesce to the juror's question seeking information about the frequency of false sexual abuse accusations was anything but strategic.

¶ 21 Because defense counsel invited the expert's response, the error is unreviewable.[3]

### III. Prosecutorial Misconduct

¶ 22 Ramirez contends that the district court plainly erred when it allowed the prosecutor to commit misconduct during rebuttal closing argument by "distorting [the] burden of proof." We aren't convinced.

---

[3] Having concluded that defense counsel invited the expert's response to the juror's question, we do not reach the People's related arguments that defense counsel opened the door to the expert's response or waived any objection to that response.

¶ 23    In his closing argument, defense counsel maintained that Ramirez "has been subjected to a false accusation."  Counsel argued that the victim was lonely and attention-seeking, her version of events didn't "make any sense," she couldn't remember critical details, no evidence corroborated the outcry, and Ramirez consistently denied the allegations because "he didn't do it."

¶ 24    The prosecutor then argued in rebuttal closing:

> To find [Ramirez] not guilty, you would have to believe that [the victim] was sophisticated enough to make this all up and remember the details four years later.  You would have to believe that she is sophisticated enough to carry this story through.  The little girl who, when asked in the forensic interview, [w]here does your godfather live, doesn't think, oh, we're talking about addresses.  She says, [i]n a house, the same house that they've been talking about for ten minutes prior.  That little girl is not sophisticated enough to invent this.
>
> . . . .
>
> You would have to believe that [the victim], for whatever reason, chose a day to become emotional to an extent she had never become emotional before and just invent this story for no reason whatsoever.
>
> You would have to believe that [the school principal] was making up the emotion that she

saw, the fact that [the victim] went from appearing to be a normal, quiet, thoughtful, smiley girl until [the date of the outcry] when all of a sudden, her whole body was trembling and she burst out in tears when she said . . . I was raped by my godfather at his house in fifth grade.

. . . .

To find [Ramirez] not guilty, you would have to believe that [the victim's] mom invented a story about [the victim] distancing herself from [Ramirez]. You would have to believe that [the victim] and her mom conspired to both remember that they stopped going over to [Ramirez's] house and that that fact would be a good fact to collaborate on.

. . . .

To find [Ramirez] not guilty, you would have to believe, again, that [the victim] came up with the detail, having to clean up something white from her vaginal area, that only someone who's experienced that phenomenon after sex would know about.

. . . .

And you would have to believe that [the victim] made this up for no reason at all.

¶ 25    Defense counsel did not object to any of these statements.

## B. Legal Principles and Standard of Review

¶ 26    We apply a two-step analysis to claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). We first determine "whether the prosecutor's questionable conduct was improper based on the totality of the circumstances." *Id.* If it was improper, we then determine whether the misconduct warrants reversal. *Id.*

¶ 27    Because Ramirez didn't object to the prosecutor's statements, we review for plain error. *People v. Licona-Ortega*, 2022 COA 27, ¶ 88. An error is plain if it is both obvious, meaning that it "contravene[s] a clear statutory command, a well-settled legal principle, or Colorado case law," and substantial, meaning that it "so undermine[d] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Buckner*, 2022 COA 14, ¶ 43. Only misconduct that is "flagrantly, glaringly, or tremendously improper" warrants reversal under the plain error standard. *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005) (citation omitted); *see also People v. Smalley*, 2015 COA 140, ¶ 37 ("Prosecutorial misconduct in closing argument rarely constitutes plain error.").

## C.    The District Court Did Not Commit Plain Error

¶ 28    Ramirez now says that the district court plainly erred by allowing the prosecutor to summarize what the jury would "have to believe" to find Ramirez not guilty.

¶ 29    In support of his argument, Ramirez says the prosecutor told the jury that to "acquit Ramirez," it must believe that several witnesses "repeatedly lied."  To be sure, it's improper for a prosecutor to opine that a witness lied.  *Domingo-Gomez,* 125 P.3d at 1050.  But contrary to Ramirez's assertion, the prosecutor never used the word "lie" (or a prohibited equivalent) in rebuttal closing or when referring to a witness.  And because prosecutors may fairly comment on witness demeanor and credibility, *People v. Constant,* 645 P.2d 843, 846 (Colo. 1982), as well as respond to defense counsel's arguments, *People v. Ray,* 2025 CO 42M, ¶ 140, without the benefit of some specific objection, we cannot fault the district court for allowing the prosecutor's rebuttal argument.

¶ 30    Ramirez also says that the prosecutor improperly distorted the burden of proof by arguing what the jury "would have to believe" to find Ramirez not guilty.  But a division of this court has rejected that argument, holding that rebuttal comments summarizing what

12

the jury "would have to believe" to find the defendant "not guilty" do not shift the burden of proof and are not improper. *People v. Robles*, 302 P.3d 269, 280 (Colo. App. 2011), *aff'd*, 2013 CO 24. The district court therefore did not err by allowing the argument. *See People v. Scott*, 2017 CO 16, ¶ 17 ("[T]he trial judge is bound to follow the decisions of the appellate courts and cannot generally be faulted for not departing from that authority sua sponte."), *abrogated on other grounds by, Whiteaker v. People*, 2024 CO 25, ¶ 25.

¶ 31     We recognize that, after Ramirez's trial, a division of this court concluded that prosecutors may not argue that the jury "*must disbelieve the prosecution's witness before it could acquit the defendant.*" *People v. Cuellar*, 2023 COA 20, ¶ 69. The *Cuellar* division concluded that this argument "misstated the law" and "had the potential to lower the prosecution's burden of proof." *Id.* at ¶¶ 67-68.

¶ 32     But to be plain, an error must be obvious at the time of trial. *People v. Crabtree*, 2024 CO 40M, ¶¶ 41-43. Even setting aside the division split on the propriety of the prosecutor's rebuttal comments, because *Cuellar* was decided after Ramirez's trial, any

error was not obvious at the time of trial. *See id.* at ¶ 45; *see also Ray*, ¶ 146 (concluding that any error in the prosecutor's comments was not plain because "the first appellate opinion to explicitly disapprove" of similar comments was announced after the defendant's trial).

## IV.   Disposition

¶ 33   The judgment is affirmed.

JUDGE LIPINSKY and JUDGE KUHN concur.