**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 23 EAP 2023 |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on |
| | : | December 23, 2022, at 1157 EDA |
| v. | : | 2021, affirming the Judgment of |
| | : | Sentence entered on April 1, 2021, |
| | : | in the Court of Common Pleas, |
| RAHEEM STEVENSON, | : | Philadelphia County, Criminal |
| | : | Division at CP-51-CR-0000724- |
| Appellant | : | 2018. |
| | : | |
| | : | ARGUED: March 6, 2024 |

**OPINION**

**JUSTICE BROBSON**                                                    **DECIDED: July 22, 2024**

In *Ohler v. United States*, 529 U.S. 753, 760 (2000), the Supreme Court of the United States held that, under federal law, a defendant who is unsuccessful in persuading a trial court to exclude evidence of a prior conviction in the context of a motion *in limine* and then preemptively introduces that evidence cannot claim on appeal that the trial court's admissibility ruling was in error. This discretionary appeal requires us to decide whether the same rule should be recognized under Pennsylvania law. For the reasons that follow, we conclude that it does not. As the Superior Court reached a contrary conclusion, we reverse the judgment of that court and remand with instructions.

**I. BACKGROUND**

On December 3, 2017, Yuguang Lin (Lin) and Ruan "Katie" Wenting (Wenting) parked their vehicle in the area of 3000 North Franklin Street in Philadelphia, where the

couple lived in an apartment above a beer distributor.[1]  After Lin and Wenting exited the vehicle, three masked men approached them and took Lin's cell phone and Wenting's purse.  The men then indicated that they knew the couple lived in the building and demanded entry.  Once inside, the group proceeded to an office, where the three men filled black plastic bags with money from a cash register while also taking Newport cigarettes and Black & Mild cigars from the room.  After threatening Wenting with a gun, the men fled.

Wenting and Lin called police, who tracked Lin's stolen cell phone to a parked vehicle.  Upon approaching the vehicle, an officer spotted a purse lying in the street under the passenger side.  Inside the vehicle, the police found Shaquan Lewis (Lewis) in the driver's seat and Raheem Stevenson (Appellant) in the front passenger seat.  Police also located a black plastic bag on the floor between Appellant's feet, as well as Newport cigarettes and Black & Mild cigars strewn about the center console between Lewis and Appellant.  After directing Appellant to exit the vehicle, police additionally noticed that Appellant was sitting next to a black flashlight taser leaning against the center console and on top of a red wallet, which Wenting identified along with the purse as belonging to her.  Upon further investigation and the execution of a search warrant, police also discovered, *inter alia*, Lin's cell phone, a ski mask, and clothing consistent with the victims' description of Appellant.

Based on the foregoing, the Commonwealth of Pennsylvania (Commonwealth) charged Appellant with, *inter alia*, two counts of robbery and one count each of burglary and criminal conspiracy.  The matter proceeded to a jury trial. After the Commonwealth's case-in-chief, Appellant indicated his desire to testify in his defense.   Just prior to

---

[1] Ruan's parents own the apartment and beer distributor.

Appellant taking the stand, defense counsel made an oral motion *in limine* to preclude the

Commonwealth from questioning Appellant about a burglary conviction from 2005:[2]

> THE COURT: All right. Do you want to put anything else on the record?
>
> [DEFENSE COUNSEL]: Just very briefly. My client, back in 2005, had a guilty plea to the charge of burglary. I—
>
> . . . .
>
> [DEFENSE COUNSEL]: —I would move to preclude that from coming in. I recognize it's probably crimen falsi, but just because it's so remote in time how old it is.
>
> THE COURT: Okay. Do you want to say anything?
>
> [THE COMMONWEALTH]: Your Honor, given the nature of the charges, I believe he was on–I forgot what the confinement was—I would ask that it be admissible.
>
> THE COURT: All right. It's admissible. It will be allowed.

(N.T., 3/12/20, at 70-71.)

Thereafter, trial counsel conducted a supplemental colloquy of Appellant, inquiring

whether the admissibility of Appellant's prior conviction altered his decision to testify.

---

[2] With respect to trial counsel's motion *in limine*, we observe that Pennsylvania Rule of Evidence 609 (Rule 609) relates to impeachment by evidence of a criminal conviction and provides, in pertinent part:

> **(a) In General.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.
>
> **(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
>> (1) its probative value substantially outweighs its prejudicial effect; and
>>
>> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609(a)-(b).

Appellant indicated that the ruling had no effect on his desire to testify and acknowledged that his decision contradicted trial counsel's advice. Appellant then testified, asserting his innocence. At the conclusion of his direct examination, trial counsel elicited from Appellant the fact of his prior burglary conviction:

> [DEFENSE COUNSEL]: Mr. Stevenson, before I turn the floor over to the district attorney, back in 2005—I know that was some time ago--but back in 2005, you had a prior matter where you pled guilty and [were] sentenced on a burglary case; is that correct?
>
> [Appellant]: Yes.
>
> [DEFENSE COUNSEL]: Okay.

(N.T., 3/12/20, at 84.) The Commonwealth did not at any point revisit Appellant's prior conviction. In its closing charge to the jury, the trial court provided a cautionary instruction specific to the prior burglary conviction.

Following the trial, the jury found Appellant guilty of the aforementioned offenses. The trial court sentenced Appellant to eight to sixteen years of incarceration, followed by ten years of probation. Appellant timely filed a post-sentence motion, challenging, in relevant part, the trial court's ruling on the admissibility of his prior burglary conviction. The trial court denied Appellant's post-sentence motion, and Appellant timely appealed to the Superior Court. On appeal, Appellant reasserted his challenge to the admission of his prior burglary conviction, arguing, *inter alia*, that the trial court abused its discretion by failing to conduct the mandatory balancing test under Rule 609(b)(1) in denying Appellant's motion *in limine* to preclude the conviction.[3]

---

[3] A trial court is to consider the following factors in determining whether prior convictions more than ten years old are admissible as more probative than prejudicial for impeachment purposes:

> (1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; (2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime

(continued…)

A unanimous, three-judge panel of the Superior Court affirmed, albeit on alternative grounds. *Commonwealth v. Stevenson*, 287 A.3d 903, 904 (Pa. Super. 2022). Rather than deciding the merits of Appellant's claim that the trial court erred in ruling that Appellant's prior conviction was admissible, the Superior Court concluded that Appellant had forfeited that claim on appeal by preemptively introducing the prior conviction himself following the trial court's ruling. *Id.* at 905-07. The Superior Court began by setting forth Pennsylvania Rule of Evidence 103 (Rule 103), which provides, in relevant part:

> **(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:
>
>> (1) if the ruling admits evidence, a party, on the record:
>>
>>> (A) makes a timely objection, motion to strike, or motion *in limine*; and
>>>
>>> (B) states the specific ground, unless it was apparent from the context; or
>>
>> (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.
>
> **(b) Not Needing to Renew an Objection or Offer of Proof.** Once the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Pa.R.E. 103(a)-(b).

---

for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; (3) the age and circumstances of the defendant; (4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and (5) the existence of alternative means of attacking the defendant's credibility.

*Commonwealth v. Rivera*, 983 A.2d 1211,1227 (Pa. 2009) (quoting *Commonwealth v. Randall*, 528 A.2d 1326, 1328 (Pa. 1987)). In its opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court concluded that it properly admitted Appellant's prior burglary conviction under the factors to be considered when conducting Rule 609(b)(1)'s balancing test and that, even if the court erred in admitting the prior conviction, any such error was harmless. (Tr. Ct. Rule 1925(a) Op., 11/1/2021, at 4-9.)

The Superior Court first concluded that Appellant initially preserved his claim of error given that: (1) he made an oral motion *in limine* to preclude the Commonwealth from using the prior conviction; (2) the Commonwealth opposed the motion; and (3) the trial court denied the motion. *Stevenson*, 287 A.3d at 905. Nonetheless, the Superior Court next concluded that Appellant forfeited his properly preserved issue by introducing the prior conviction himself following the trial court's denial of the motion *in limine*. In support of its conclusion, the Superior Court relied upon this Court's decision in *Commonwealth v. Conner*, 341 A.2d 81 (Pa. 1975), which the Superior Court interpreted as holding "that when a defendant introduces evidence at trial, he cannot later raise a claim of error challenging the admission of that evidence." *Stevenson*, 287 A.3d at 905. While *Conner* did not involve a factual scenario in which the defendant received an adverse admissibility ruling via a motion *in limine* prior to introducing the evidence himself—a distinction that the Superior Court acknowledged in the instant matter—the Superior Court nonetheless reasoned that *Conner*'s holding was not limited to the precise factual circumstance presented and that, "[i]nstead, the Court's analysis focused on which party admitted the conviction." *Id.* at 906 (citing *Conner*, 341 A.2d at 83-84). According to the Superior Court, the fact that the defendant in *Conner* and Appellant both made the strategic decision to admit their prior convictions themselves to "lessen the sting of the Commonwealth's anticipated elicitation of the conviction" and later challenged the admission was the "crucial point." *Id.*

The Superior Court then observed that other cases from that court have similarly "found that a defendant forfeits claims of trial court error concerning the admission of objectionable evidence when he 'opens the door' to the evidence." *Id.* (relying upon *Commonwealth v. Lewis*, 885 A.2d 51, 54-55 (Pa. Super. 2005) (finding waiver of challenge to admitted testimony elicited by Commonwealth concerning prior drug

transactions involving co-defendant where defense counsel's questions opened door for Commonwealth to probe further into potentially objectionable area), and *Commonwealth v. Stakley*, 365 A.2d 1298, 1299-1300 (Pa. Super. 1976) (*en banc*) (finding waiver of challenge to admitted testimony elicited by Commonwealth concerning defendant's "unsuitable" discharge from United States Army where prior questioning by defendant's counsel opened door to such testimony by suggesting defendant was honorably discharged)).  Finally, relying upon the United States Supreme Court's decision in *Ohler*, the Superior Court concluded that its "forfeiture analysis is consistent with well-established federal law, which provides that a defendant cannot later challenge an adverse motion *in limine* ruling on appeal if he testifies and admits the at-issue prior conviction on direct examination."  *Id.*

Based on the foregoing, the Superior Court opined that "an appellant who receives an adverse evidentiary ruling can either preserve the issue for appeal by lodging an objection to the introduction of the evidence, or he can make a strategic choice to forfeit the objection and preemptively introduce the evidence himself.  He cannot do both simultaneously."  *Id.*  Interpreting Appellant's actions as choosing the latter option, the Superior Court concluded that Appellant was prohibited from challenging on appeal the propriety of the trial court's ruling on his motion *in limine*.  In doing so, the Superior Court also rejected Appellant's suggestion that he did not forfeit his claim because he was engaging in a sound trial strategy.  *Id.* at 906 n.3.  The Superior Court concluded that Appellant's position was unsupported by precedent and that, in any event, the court generally defers the assessment of a trial counsel's chosen strategy to collateral review.  *Id.*  Accordingly, the Superior Court affirmed Appellant's judgment of sentence.

## II. ISSUE

Appellant filed a petition for allowance of appeal in this Court, and we granted review to decide the following issue as phrased by Appellant: "Where a trial judge rules that a nearly thirteen[-]year[-]old prior conviction may be used for impeachment and the defendant then testifies and preemptively admits the conviction, does doing so waive the right to appeal the *in limine* holding?" *Commonwealth v. Stevenson*, 303 A.3d 118 (Pa. 2023) (*per curiam*). As this question presents a pure question of law, our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Bortz*, 909 A.2d 1221, 1223 (Pa. 2006).

## III. ANALYSIS

### A. Parties' Arguments

Appellant argues that a defendant does not waive the right to appeal a trial court's ruling to admit evidence of a prior conviction on a motion *in limine* by preemptively admitting that evidence himself following the ruling. Appellant contends that his position is supported by Rule 103, which adopted preexisting common law and expressly provides that a party may appeal a definitive ruling to admit evidence that is challenged via an objection or a motion *in limine* without requiring the party to renew the objection to preserve the claim. Appellant further argues that the Superior Court erred in treating Rule 103's requirements "as a necessary but not sufficient condition for issue preservation[,] . . . offer[ing] no explanation from the text or history of that Rule to support its approach." (Appellant's Brief at 14.) Appellant adds that the Superior Court's conclusion is based upon a misreading of *Conner*, a misapplication of case law relating to the "open the door" doctrine, and a misunderstanding of the doctrines of "waiver" and "forfeiture." (*Id.* at 14-17.) Highlighting that this Court and the Superior Court have considered the merits of evidentiary challenges in other cases involving "preemptive

disclosure" of evidence by the challenging party following a ruling adverse to that party on the evidence's admissibility, Appellant argues that the Superior Court acted without any authority in engrafting a new condition on Rule 103 for purposes of issue preservation. (*Id.* at 15-16.)

Turning to the Superior Court's reliance on *Ohler*, Appellant contends that *Ohler* has no precedential value for purposes of Pennsylvania law. Appellant adds that *Ohler* is incompatible with Rule 103 as well as "the strong Pennsylvania guarantees of the right to present a defense[] and our state constitutional right to an appeal, a right not enshrined in the United States Constitution." (Appellant's Brief at 18 (citations omitted).) Appellant also suggests that *Ohler* was erroneously decided, noting that other states have declined to follow *Ohler* and that the decision has been subject to much scholarly criticism. Appellant further argues that to the extent *Ohler* is premised upon the notion that the prosecution may ultimately choose not to use a defendant's prior conviction against the defendant once a trial court rules that the prior conviction is admissible—and that a defendant's preemptive disclosure of the prior conviction deprives the prosecution of that choice—that proposition is a "myth [that] has been convincingly dispelled." (*Id.* at 23-24 n.11.) Finally, Appellant argues that *Ohler* and the Superior Court's holding in this case are incompatible with a fair and reliable trial given, *inter alia*, the negative implications resulting to parties in Appellant's position and their counsel in choosing not to "draw the sting" of damaging evidence.[4]

---

[4] The following entities have filed *amici curiae* briefs on behalf of Appellant: (1) the Pennsylvania Bar Association; (2) the Pennsylvania Association for Justice; (3) the Pennsylvania Defense Institute and Philadelphia Association of Defense Counsel; and (4) the Bucks County Criminal Defense Conflict Panel. *Amici* echo and expand upon Appellant's arguments, particularly with respect to how the Superior Court's decision contravenes longstanding Pennsylvania jurisprudence and practice not only in the criminal context, but also in the civil context, and the widespread ramifications of the decision.

The Commonwealth argues that the Superior Court correctly resolved the narrow issue before it under the particular circumstances of this case by applying the "traditional" rule—consistent with *Ohler*—that "a defendant cannot seek appellate relief from the allegedly unfair prejudicial effect of evidence he himself introduced." (Commonwealth's Brief at 16.) The Commonwealth contends that the traditional rule serves the interests of judicial efficiency and fairness, as defendants should be discouraged from preemptively injecting objectionable evidence into the trial record and the Commonwealth should not be required to bear the risk of appellate reversal for evidence introduced by the defendant. The Commonwealth adds that the case law upon which Appellant relies in support of his contrary position is inapt. Citing authorities to refute the argument that preemptive disclosure of adverse evidence is a sound strategic choice, the Commonwealth submits that, even if sound, that strategy only "beg[s] rather than answer[s] the question of whether the Commonwealth should face the risk of appellate reversal when the defendant short-circuited the Commonwealth's right to decide whether (and, if so, when and how) to introduce the evidence *at all*." (*Id.* at 20-21 (emphasis in original).) The Commonwealth faults Appellant for preemptively introducing evidence "reflexively as a self-help remedy of first resort" rather than a last resort and suggests that there is no unfairness in enforcing the traditional rule particularly under such circumstances, as counsel should attempt to win at trial, not on appeal.

The Commonwealth adds that Appellant's criticisms of *Ohler* are overstated and "fail[] to account for the substantial risk of rewarding the type of invited error shown on trial records like this one." (*Id.* at 22-23.) The Commonwealth further argues that Appellant's claim does not "account for Pennsylvania's statutory bar to confronting

defendants directly with their prior convictions"[5] and that speculation about jurors' perceptions of prior convictions not preemptively admitted by defendants "cannot easily be reconciled with this Court's recognition that jurors can be expected to follow limiting instructions on this subject." (*Id.* at 23-24.) Additionally, the Commonwealth argues that the Superior Court correctly recognized that Rule 103 does not address preemptive disclosure or answer the question presented herein and that, as such, the Superior Court's decision to apply the traditional rule does not conflict with Rule 103. The Commonwealth also submits that the "forfeiture" of a right does not require intentional misconduct and contends that Appellant's constitutional arguments are underdeveloped.

The Commonwealth further claims that, while it may be true that Appellant had to choose whether to disclose his prior conviction as a trial strategy, it does not follow that the choice was "forced" or "unfair," at least on this record. (*Id.* at 26 & n.15.) On this point, the Commonwealth faults Appellant for making "only a token effort to exclude the evidence" and notes that the Commonwealth "hardly 'pushed for' and 'fought for' admission of" the evidence. (*Id.* at 27-29.) The Commonwealth also faults Appellant for failing to seek reconsideration of the trial court's ruling, which the Commonwealth characterizes as "preliminary" and "subject to change" given that it was fact-dependent in nature and not premised upon a pure question of law, or otherwise failing to "mitigate any alleged unfair prejudice[ ] in light of" Appellant's testimony on direct examination.

---

[5] 42 Pa. C.S. § 5918 (providing that, with exception, "[n]o person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation"). The Commonwealth argues that this statute reduces the potential for prejudice against a defendant and encourages the admission of prior convictions via stipulation.

(*Id.* at 30-33.) Finally, the Commonwealth suggests that this Court need not decide preemptive disclosure issues beyond the narrow and fact-specific one presented here.[6]

In reply, Appellant argues that the Commonwealth relies upon inapposite case law in support of its position while ignoring applicable precedent, differences between Rule 103 and Federal Rule of Evidence 103, and scholarly recognition that Pennsylvania does not adhere to *Ohler*. Appellant also suggests that we should reject the Commonwealth's attempts to diminish the importance of preemptive disclosure as a trial strategy, as well as the Commonwealth's attacks on the way in which Appellant sought to exclude the prior conviction and employed the strategy here, arguing that the Commonwealth's position is based upon a selective reading of the legal authority on which it relies as well as a misapprehension of the law governing evidence and on the record. Appellant then criticizes the Commonwealth for presenting arguments that pertain to the merits of the trial court's ruling on his motion *in limine* or that are otherwise irrelevant to the issue presented. Appellant lastly argues that we should not and, indeed, cannot in any principled way, limit our holding to the circumstances of this case.

## B. Discussion

We begin with an examination of the United States Supreme Court's decision in *Ohler*. In that case, the defendant was arrested and charged with drug offenses. *Ohler*, 529 U.S. at 754-55. Before trial, the prosecution filed a motion *in limine* seeking to admit the defendant's prior felony conviction as impeachment evidence under Federal Rule of Evidence 609(a)(1). *Id.* at 755. The district court initially reserved ruling on the motion but, on the first day of trial, ruled that evidence of the prior conviction would be admissible if the defendant testified. *Id.* Thereafter, the defendant testified in her own defense and

---

[6] In conjunction with its final point, the Commonwealth suggests that we consider dismissing this appeal as improvidently granted on the ground that it is not an ideal vehicle for announcing a broad rule regarding preemptive disclosure of damaging evidence.

admitted the prior conviction on direct examination.  *Id.* A jury convicted the defendant, and she was sentenced accordingly.  On appeal, the defendant challenged the district court's *in limine* ruling, and the Court of Appeals for the Ninth Circuit affirmed on the ground that the defendant waived her objection by introducing the evidence of the conviction during her direct examination.  *Id.*  The Supreme Court of the United States granted certiorari, noting that a conflict among the Circuits existed regarding whether appellate review of an *in limine* ruling is available under the circumstances presented. *Id.*

Upon review, the United States Supreme Court affirmed in a divided opinion, holding "that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error."  *Ohler*, 529 U.S. at 760.  In doing so, the Court began by recognizing the general rule that "a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."  *Id.* at 755.  The Court observed that, while the defendant sought to escape the application of this rule by invoking Rule 609 and Federal Rule of Evidence 103 (Federal Rule 103), her attempt to do so was unavailing because neither of those rules addressed the issue at hand.  *Id.* at 755-56.  Beginning with Federal Rule 103,[7] the United States Supreme Court explained that Federal Rule 103 merely

> sets forth the unremarkable propositions that a party must make a timely objection to a ruling admitting evidence and that a party cannot challenge an evidentiary ruling unless it affects a substantial right.  The Rule does not purport to determine when a party waives a prior objection, and it is silent

---

[7] At the relevant time, Federal Rule 103(a)(1) provided:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . .

*Ohler*, 529 U.S. at 756 n.1 (quoting Fed.R.E. 103(a)(1)).

with respect to the effect of introducing evidence on direct examination, and later assigning its admission as error on appeal.

*Id.* at 756. The Court added that Federal Rule 609(a)[8] was likewise unavailing to the defendant, as that rule "merely identifie[d] the situations in which a witness' prior conviction may be admitted for impeachment purposes." *Id.* That is, Federal Rule 609 did no more than permit "the eliciting of a prior conviction on direct examination." *Id.* at 756-57.

The United States Supreme Court next addressed the parties' contentions regarding trial strategy and the fairness of applying a rule of waiver to the scenario before the Court. *See Ohler*, 529 U.S. at 757 (observing defendant's argument that waiver rule would be unfair because it compels defendant to forgo tactical advantage of preemptively introducing conviction for purposes of bolstering credibility, as well as prosecution's retort that effectiveness of such strategy was "debatable" and that any advantage gained was "unwarranted" given that jury would not be apprised of defendant's unsuccessful attempt to persuade court to exclude evidence). The Court explained that these contentions, irrespective of their merit, tended to obscure that both the prosecution and defense must make myriad choices as the trial progresses, including: (1) a defendant's decision to introduce a prior conviction on direct examination to "remove the sting or to take [a] chance[] with the prosecution's possible elicitation of the conviction on cross-examination;" and (2) the prosecution's decision to impeach a defendant through

---

[8] Again, at the relevant time, Federal Rule 609(a)(1) provided:

> For the purpose of attacking the credibility of a witness, . . . evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused. . . .

*Ohler*, 529 U.S. at 756 n.2 (quoting Fed.R.E. 609(a)(1)).

use of a prior conviction or to forgo using it so as to not risk possible reversal on appeal from its use. *Id.* at 757-58. Acknowledging that the prosecution has an inherent advantage with respect to these competing trial strategies because it need not make its decision until after a defendant decides to take the stand and testifies, the Court reasoned that the defendant's "submission would deny to the Government its usual right to" make that decision while still preserving her claim of error for appeal. *Id.* at 758.

The United States Supreme Court additionally reasoned that, while the district court likely would have abided by its *in limine* ruling at trial in the matter before the Court, "*in limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial;" thus, the defendant's position "would deprive the trial court of the opportunity to change its mind after hearing all of the defendant's testimony." *Id.* at 758 n.3. Moreover, the Court opined that "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative," as it is only when the prosecution decides to elicit the testimony that an appellate court is "confronted with a case where, under the normal rules of trial, the defendant can claim the denial of a substantial right if in fact the district court's *in limine* ruling proved to be erroneous." *Id.* at 759 (alteration in original) (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)). The Court concluded that it found nothing "unfair . . . about putting [the defendant] to her choice in accordance with the normal rules of trial." *Id.*

Finally, the *Ohler* majority rejected the defendant's argument that, under these circumstances, applying the waiver rule unconstitutionally burdened her right to testify. The United States Supreme Court determined that the rule did not prevent the defendant from taking the stand and presenting any admissible testimony she chooses and that, while the prosecution's cross-examination and use of prior convictions for impeachment purposes may deter a defendant from doing so, it was not unconstitutional for the

prosecution to use those tactics or to require the defendant to weigh such considerations in deciding to testify. *Id.* at 759-60.

Justice Souter penned a dissenting opinion, joined by Justices Stevens, Ginsburg, and Breyer. According to the dissent, the *Ohler* majority's holding found no basis "in precedent, the rules of evidence, or the reasonable objectives of trial." *Ohler*, 529 U.S. at 760 (Souter, J., dissenting). Justice Souter first criticized the majority's reliance upon *Luce* on the ground that *Luce* was distinguishable from *Ohler*. In *Luce*, the dissent explained, the United States Supreme Court held that a defendant could not appeal an *in limine* ruling to admit prior convictions as impeachment evidence under Federal Rule 609(a) where the defendant ultimately did not take the stand and testify, thereby never suffering the impeachment.[9] *Id.* (Souter, J., dissenting). The dissent opined that "*Luce* did not derive a waiver rule from some general notion of fairness; it merely acknowledged the incapacity of an appellate court to assess the significance of [an *in limine*] ruling for a defendant who remains silent" given the speculation and uncertainty such an assessment would entail in the absence of the defendant taking the stand and testifying. *Id.* at 760-61 (Souter, J., dissenting). The dissent observed that, in *Ohler*, there was a factual record on which the claim could be reviewed wherein the defendant testified and there was no question that the *in limine* ruling controlled her counsel's decision to elicit the prior conviction. Adding that it was of no moment for purposes of any potential harmless error analysis that the convictions were revealed on direct examination as opposed to cross-examination, the dissent reasoned that *Luce* did not control *Ohler* because *Ohler* did not present the practical difficulties on which *Luce* turned. *Id.* at 761.

---

[9] As noted by the *Ohler* dissent, the rationale underlying the defendant's position in *Luce* was that the threat of impeachment discouraged him from exercising his right to testify in his own defense. *Ohler*, 529 U.S. at 760 (Souter, J., dissenting).

The dissent next found fault with the majority's reliance on the general rule that "a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Id.* at 761-62 (Souter, J., dissenting) (citation omitted). The dissent argued that the general rule makes sense in two scenarios: (1) "when a party who has freely chosen to introduce evidence of a particular fact later sees his opponent's evidence of the same fact erroneously admitted," in which instance the party suffers no prejudice; and (2) "when the objecting party takes inconsistent positions, first requesting admission and then assigning error to the admission of precisely the same evidence at his opponent's behest," in which instance the objecting "party should not be permitted 'to blow hot and cold' in this way." *Id.* at 762 (Souter, J., dissenting) (quoting 1 J. Strong, McCormick on Evidence § 55, p. 246, n.14 (5th ed. 1999)). Noting that *Ohler* presented a third, different scenario in which "the defendant has opposed admission of the evidence and introduced it herself only to mitigate its effect in the hands of her adversary," Justice Souter reasoned that such a scenario fell outside the scope of the general principle, as the legal scholarship "almost uniformly" recognized. *Id.* at 762 (Souter, J., dissenting). The dissent, thus, concluded that the law of evidence generally ran contrary to the majority's holding.

Turning to the *Ohler* majority's points on "fairness" and "normal trial conditions," the dissent criticized the majority for being too simplistic in its analysis. *Id.* at 763-64. The dissent opined that the majority's analysis begged the question of whether the "normal rules of trial" apply outside of the circumstances for which those rules were created and noted that the operative consideration "is not which side gains a tactical advantage, but which rule assists in uncovering the truth." *Id.* at 763 (Souter, J., dissenting). In this regard, the dissent opined that a defendant's revelation of prior convictions at the outset of her testimony fully serves the purpose of Federal Rule 609,

allowing the jury to bear those convictions in mind as she testifies and to give heightened scrutiny to her testimony. *Id.* at 764 (Souter, J., dissenting). The dissent added that, while the prosecution's revelation of the same information on cross-examination likewise warns the jury, it additionally creates "an impression of current deceit by concealment [that] is very much at odds with any purpose behind [Federal] Rule 609, being obviously antithetical to dispassionate factfinding in support of a sound conclusion." *Id.* (Souter, J., dissenting). According to the dissent, "[t]he chance to create that impression is a tactical advantage for the Government, but only in the majority's dismissive sense of the term; it may affect the outcome of the trial, but only if it disserves the search for truth." *Id.* (Souter, J., dissenting). The dissent concluded that allowing a defendant to introduce prior convictions on direct examination promotes trial fairness "without depriving the Government of anything to which it is entitled" and that there was "no reason to discourage the defendant from introducing the conviction herself, as the majority's waiver rule necessarily does." *Id.* (Souter, J., dissenting).

Several state jurisdictions have grappled with the issue before us today, both prior to and in the wake of *Ohler*, as *Ohler* is "not binding on state courts because the waiver issue does not implicate federal constitutional principles." *Cure v. State*, 26 A.3d 899, 908 (Md. 2011). While a handful of jurisdictions have aligned with the *Ohler* majority's

rule,[10] a majority of them have adopted the reasoning of the *Ohler* dissent.[11]  A review of

the case law reveals that state jurisdictions have chosen to adopt one rule over the other

[10] *See Williamson v. State*, 589 S.W.3d 292, 295-96 (Tex. App. 2019) (observing that *Ohler* and other Texas appellate courts "have held that a defendant waives the right to complain about a trial court's ruling on the admissibility of prior convictions when he preemptively introduces them on direct examination" and holding that defendant waived issue for same reason); *Adkins v. State*, 800 S.E.2d 341, 344-45 (Ga. 2017) (citing Georgia precedent and *Ohler* in observing that "[a] defendant generally cannot complain on appeal about the admission of evidence that he introduced himself, even when he does so after the trial court has overruled his objection to the admissibility of that evidence"); *Moseley v. State*, 751 S.E.2d 108, 109 & n.3 (Ga. Ct. App. 2013) (relying upon Georgia precedent and *Ohler* to conclude that defendant could not appeal trial court's ruling to admit, over defendant's objections, evidence of prior convictions where defendant testified to prior convictions on direct examination); *Dodd v. State*, 100 P.3d 1017, 1039 & n.5 (Okla. Crim. App. 2004) (relying upon Oklahoma precedent and *Ohler* to conclude that defense counsel waived any error relative to trial court's ruling *in limine* on admissibility of prior conviction evidence "by choosing to broach the subject on direct examination, thereby avoiding the 'sting' of having them first revealed by the prosecutor on cross-examination"); *Rivers v. State*, 792 So.2d 564, 566-67 (Fl. Dist. Ct. App. 2001) (concluding that, while defense counsel initially preserved challenge to admissibility of prior juvenile adjudication with timely and specific objection, "counsel subsequently waived the right to challenge the issue on direct appeal by preemptively introducing the evidence of the prior adjudication during direct examination," following *Ohler*); *see also Woodall v. Commonwealth*, 63 S.W.3d 104, 127 (Ky. 2001) (relying upon *Ohler* to conclude that defendant waived claim that mental health evaluation, which was conducted over his objection, violated constitutional rights by introducing evaluation into evidence on his own behalf).

[11] *See Cure*, 26 A.3d at 911-12 (adopting reasoning of *Ohler* dissent and concluding that, where defendant knows court will admit prior conviction for impeachment purposes, "a defendant does not waive his or her right to appellate review of the admissibility ruling on the use of [a prior] conviction for impeachment purposes" by testifying about the conviction on direct examination); *People v. Carpenter*, 988 P.2d 531, 634 (Cal. 1999) (holding that defendant's challenge to pretrial ruling to permit admission of his prior convictions should he testify was cognizable on appeal even though defendant did not renew pretrial objection at trial and elicited convictions himself on direct examination; explaining that "[d]efendant obviously believed it was better for the jury to hear of the convictions from him first rather than from the prosecution later" and that "[h]e did not have to take this step at the cost of losing his right to appeal the ruling that caused it"); *State v. Ross*, 405 S.E.2d 158, 163-64 (N.C. 1991) (holding that defendant did not waive challenge to trial court's denial of motion *in limine* to exclude evidence of defendant's prior conviction or "open the door" to cross-examination on that subject by testifying to prior conviction on direct examination; "[a] defendant would face an unfair dilemma if forced to (continued…)

choose between devastating cross-examination about a conviction and waiver of his right to appeal the denial of a pretrial motion"); *State v. Mueller*, 460 S.E.2d 409, 411 (S.C. App. Ct. 1995) (holding that, "if a party has obtained a final ruling on the admissibility of impeachment evidence, that party does not lose his right to challenge on appeal the admissibility of the evidence by eliciting the evidence during direct examination"); *McGee v. State*, 569 So.2d 1191, 1194-95 (Miss. 1990) (holding that defendant could preempt State by offering evidence of his own prior conviction on direct examination following adverse motion *in limine* ruling without waiving issue for appeal), *overruled on other grounds by White v. State*, 785 So.2d 1059, 1061 (Miss. 2001); *State v. Thang*, 41 P.3d 1159, 1168 (Wash. 2002) ("We agree with Justice Souter's analysis. A defense lawyer who introduces preemptive testimony only after losing a battle to exclude it cannot be said to introduce the evidence voluntarily."); *State v. Phillips*, 450 P.3d 54, 55 (Or. Ct. App. 2019) (holding that *Ohler* was not binding and applying Oregon Supreme Court precedent to hold that "[o]nce the trial court concluded that the evidence of defendant's prior conviction was admissible, that ruling was law of the trial and defendant did not waive his objection [or appellate challenge] to its admission by bringing it up in his direct testimony"); *State v. Allen*, 323 P.3d 925, 929-30 (N.M. Ct. App. 2013) (holding that New Mexico precedent compelled "result contrary to the majority opinion in *Ohler*" and that court "may consider the admissibility of criminal convictions for impeachment purposes where the defendant, as a tactical matter, elects to preemptively introduce such evidence after having previously objected to its admissibility and obtained a ruling from the district court"); *State v. Swanson*, 707 N.W.2d 645, 654 (Minn. 2006) (holding that "reasoning of *Ohler* is at odds with Minnesota precedent" and "that a defendant who testifies about his convictions on direct examination after denial of a motion *in limine* to exclude those convictions has not forfeited the opportunity to appeal the admissibility of those prior convictions"); *State v. Gary M.B.*, 676 N.W.2d 475, 482-83 (Wis. 2004) (observing that "*Ohler* is contrary to the approach Wisconsin courts have utilized" and "against the great weight of academic authority" and holding that "under Wisconsin law, a defendant does not commit strategic waiver when he unsuccessfully objects to the introduction of evidence and preemptively introduces the evidence in an attempt to mitigate its prejudicial effect"); *Pineda v. State*, 88 P.3d 827, 831 (Nev. 2004) (choosing, as logical extension of Nevada precedent, "to follow those states that allow appellate consideration of the admissibility of criminal convictions for impeachment purposes where the defendant, as a tactical matter, elects to introduce such evidence after having objected to basic admissibility via a fully litigated motion *in limine*"); *Whisler v. State*, 116 P.3d 59, 62 (Nev. 2005) (reaffirming *Pineda*); *Zola v. Kelley*, 826 A.2d 589, 593 (N.H. 2003) ("We therefore decline to follow *Ohler* [in this civil case] and conclude that when a trial judge makes a definitive pretrial ruling that evidence of a prior conviction is admissible, a party's preemptive introduction of that evidence does not automatically waive the issue for appellate review."); *State v. Keiser*, 807 A.2d 378, 388 (Vt. 2002) (adopting reasoning of *Ohler* dissent in holding that defendant did not waive objection to admission of prior convictions by testifying to them on direct examination following trial court's adverse motion *in limine* ruling); *Malone v. State*, 829 So.2d 1253, 1259-60 (Miss. Ct. App. 2002) (acknowledging Ohler but holding that it could not circumvent Mississippi Supreme (continued…)

largely based upon preexisting precedent in those states, the purposes behind those states' respective rules of evidence and related notions of fairness, and the weight of academic authority on the subject. Upon consideration of these same factors, as well as other points presented to us in the briefing, we join the chorus of state courts that have rejected *Ohler*'s majority ruling and hold that, consistent with the *Ohler* dissent and Pennsylvania law, a defendant who testifies about his convictions on direct examination after unsuccessfully litigating a motion *in limine* to exclude those convictions has not forfeited the opportunity to appeal the admissibility of those prior convictions on appeal.[12]

---

Court's pre-*Ohler* decision in *McGee, supra*); *State v. Daly*, 623 N.W.2d 799, 800-01 (Iowa 2001) (declining to follow *Ohler* because it was contrary to established Iowa precedent and holding that defendant did not waive right to object to trial court's motion *in limine* ruling to admit his prior convictions by preemptively testifying to those convictions in case-in-chief); *McGill v. DIA Airport Parking, LLC*, 395 P.3d 1153, 1156-57 (Colo. App. 2016) (agreeing with *Ohler* dissent and holding that plaintiff could challenge admissibility of impeachment evidence on appeal where plaintiff preemptively admitted evidence at trial following adverse evidentiary ruling).

[12] We disagree with the Commonwealth's suggestion that this case should be dismissed as improvidently granted. In doing so, we reject the Commonwealth's position that, on this record, Appellant did not sufficiently preserve his claim in the first instance via his motion *in limine*. As noted by the Superior Court, Appellant clearly made an oral motion *in limine* to preclude the admission of his 2005 burglary conviction, acknowledging that the conviction was "probably crimen falsi" but arguing that it should be excluded nonetheless due to its remoteness. N.T., 3/12/20, at 70-72. Moreover, though indicating some uncertainty relative to Appellant's confinement on that charge, the Commonwealth clearly opposed Appellant's motion, asking the trial court to admit the prior conviction given the nature of the charge. *Id.* Finally, the trial court made a ruling on the record that the prior conviction was "admissible" and "will be allowed." *Id.*

We likewise reject the Commonwealth's claim that the trial court's *in limine* ruling was preliminary or otherwise not definitive on this record. As Appellant explains, his counsel made his oral motion *in limine* just prior to Appellant taking the stand as the last witness of trial, and the trial court pronounced at that time that the prior conviction was "admissible" and "will be allowed." *Id.* While we acknowledge that a trial court's *in limine* ruling is generally not binding and subject to change, we agree with Appellant that the trial court's ruling in this case was definitive under the circumstances presented. As such, Rule 103(b) relieved Appellant of any obligation to renew his objection to preserve his (continued…)

As for this state's decisional law, we begin with *Conner*. In *Conner*, this Court addressed a defendant's due process challenge to the use at trial of four prior convictions, determined to be invalid for being obtained while the defendant was without counsel, to impeach his credibility as a witness and to enhance his punishment. *Conner*, 341 A.2d at 82. Similar to the instant matter, the prosecution was not the party to introduce the prior convictions at trial. Rather, the defendant in *Conner* "took the stand in his own defense and, in an attempted display of candor, revealed his past criminal record including the four invalid convictions." *Id.* at 83-84. While the defendant claimed that the Commonwealth "surely" would have introduced his prior convictions on cross-examination had he not introduced them himself, this Court observed that "the fact remain[ed] that the Commonwealth did not introduce the prior invalid convictions, nor did it cross-examine [the defendant] concerning them. Moreover, [the defendant] allege[d] no facts which would indicate the Commonwealth did plan to utilize the invalid convictions to impeach his testimony." *Id.* at 84. This Court continued:

> [The defendant] introduced his past criminal record as a matter of trial strategy, to support his credibility and soften the anticipated blow in the eyes of the jurors. Having adopted this strategy, which appeared to be in his best interest, [the defendant] cannot now be heard to complain that his own act of offering such evidence violated his constitutional rights. Under these circumstances, a new trial is not warranted.[13]

*Id.*

---

claim of error for appeal. *See* Pa.R.E. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

[13] The Court nonetheless held that the defendant was entitled to a remand for the trial court to reconsider his sentence, concluding that a remand for resentencing was required "where misinformation of a constitutional magnitude is given specific consideration by the sentencing judge" and that the record revealed that the trial court gave specific consideration to the defendant's invalid convictions in imposing sentence. *Conner*, 341 A.2d at 84-85.

We agree with the Superior Court's observation that *Conner* stands for the general, uncontroversial rule that a defendant cannot offer evidence on his own behalf at trial and then complain of error in the admission of that evidence on appeal.[14] We, however, disagree with the Superior Court's reasoning insofar as it opined that *Conner*'s holding was not limited to the facts before it and that the holding turned on which party admitted the evidence. While the fact that the defendant in *Conner* was the party to admit the evidence at issue undoubtedly factored into the *Conner* Court's analysis, we think the more critical aspect of the case is that the defendant did so under circumstances where: (1) the defendant made no objection to (and, consequently, the trial court made no ruling on) the admissibility of the evidence at issue prior to the defendant's introduction of that evidence; and (2) there was no indication that the Commonwealth intended to use the prior convictions for purposes of impeaching the defendant.

It is axiomatic that "every decision must be read against its facts." *Commonwealth v. Johnson*, 86 A.3d 182, 189 (Pa. 2014). Reading *Conner* against its facts, we find that case to be materially different from the present matter, wherein, prior to Appellant's admission of the prior conviction evidence: (1) Appellant objected to the admission of the prior conviction by the Commonwealth; (2) the Commonwealth clearly indicated its position that the conviction should be admitted; and (3) the trial court definitively ruled to admit the prior conviction. More to the point, there is no indication that *Conner* purported to address the question presented here, which concerns whether a defendant waives the right to appeal a trial court's adverse *in limine* ruling by preemptively admitting that

---

[14] This general rule is well-settled in Pennsylvania. *See*, *e.g.*, *Commonwealth v. Puksar*, 740 A.2d 219, 227 (Pa. 1999) (explaining that, "[i]n general, a party may not object to improper testimony which he himself elicits") (alteration in original) (quoting *Commonwealth v. Yarris*, 549 A.2d 513, 525 (Pa. 1988)); *Commonwealth v. McDuffie*, 382 A.2d 1191, 1192 (Pa. 1978) (plurality) ("In general, a party is not entitled to have stricken incompetent evidence which that party elicits.").

evidence following the ruling. Given these distinguishable circumstances, and in light of *Ohler* and the related case law above addressing circumstances that are akin to those presented here, we conclude that the Superior Court applied *Conner* too broadly and that *Conner*'s reasoning does not control the present matter.

For similar reasons, we also find the Superior Court's reliance on *Lewis* and *Stakley* to be inapt. As noted, *Lewis* and *Stakley* pertain to the concept of "opening the door" to the admission of otherwise objectionable evidence where each of the defendants questioned a witness on a topic in such a way as to render it permissible for the Commonwealth to elicit that evidence in response. Like this Court's decision in *Conner*, the Superior Court's decisions in *Lewis* and *Stakley* do not concern a situation in which the defendant first lodged an objection to the evidence at issue and then, following a trial court's adverse ruling on the objection, elicited the evidence themselves. This factual distinction makes "open the door" cases like *Lewis* and *Stakley* ill-suited for resolving the question before us.

Turning to other case law discussed by the parties and *amici*, Appellant relies upon *Commonwealth v. Rivera*, 983 A.2d 1211, 1218, 1228 (Pa. 2009), *Commonwealth v. Pursell*, 724 A.2d 293, 311 (Pa. 1999), and *Commonwealth v. Toomey*, 468 A.2d 479, 481-82 (Pa. Super. 1983), to argue that this Court and the Superior Court have considered the merits of claims arising from the preemptive disclosure of a testifying defendant's prior convictions. While that proposition is true, these cases likewise do not control the outcome of this matter, as they do not at any point confront the issue of waiver in rendering their merits analysis. Nonetheless, it is worth pointing out that, in *Pursell*, this Court addressed a layered claim of ineffective assistance of counsel which, in relevant part, concerned whether the defendant's trial counsel was ineffective for questioning the defendant about his prior convictions on direct examination. In doing so,

this Court observed that, having taken the witness stand at trial, the defendant "opened the door" to impeachment by the Commonwealth through the use of those prior convictions. *Pursell*, 724 A.2d at 311. The Court ultimately rejected the defendant's ineffectiveness claim, reasoning that "[t]rial counsel's strategic decision to introduce these convictions on direct examination of [the defendant], to preempt the Commonwealth's less favorable introduction of these matters, was reasonable under the circumstances." *Id.* If nothing else, *Pursell* at least signals this Court's general agreement with the notion that "drawing the sting" of a defendant's prior conviction on direct examination is a sensible trial tactic.

Moreover, as Appellant and *amici* observe, Pennsylvania case law in the civil arena aligns with the reasoning of the *Ohler* dissent. For instance, in *Stern v. Vic Snyder, Inc.*, 473 A.2d 139 (Pa. Super. 1984), an employer argued on appeal that the trial court erred in permitting testimony concerning a discharged employee's prior employment. *Stern*, 473 A.2d at 145. Notably, the employer had filed a motion *in limine* to preclude the evidence, which the trial court denied. *Id.* Relevant here, the Superior Court concluded that the employer should not

> be barred from raising th[e] issue by its failure to renew its objection at every opportunity and by its own cross-examination of [the employee] regarding his prior occupation. In *Yankunos v. Hinds Catering Co.*, 196 A. 520 ([Pa. Super.] 1938), [the Superior Court] ruled that where it clearly appears from the ruling made as to a particular objection that such ruling will be applicable to all questions asked on the same matter counsel need not repeat his objection in order to preserve the issue. Furthermore, counsel who suffers an adverse ruling would be foolish if, after preserving his objection, he or she failed to attempt to discredit the testimony by cross-examination in the hope that he or she would be vindicated on appeal. *See* McCormick on Evidence § 55 (2nd Ed. 1972).

*Stern*, 473 A.2d at 145-46.

In *Miller v. Peter J. Schmitt & Co. Inc.*, 592 A.2d 1324 (Pa. Super. 1991), a store owner challenged the admission of evidence at trial relative to subsequent remedial

measures the store owner took after a woman slipped and fell while in the appellant's store. *Miller*, 592 A.2d at 1329. In response, the appellees argued that the store owner "opened the door" to the evidence through its questioning of witnesses at trial and waived the claim by failing to object to the evidence. *Id.* The Superior Court rejected these arguments, observing that, prior to trial, the store owner filed a motion *in limine* to exclude the evidence, and the trial court denied the motion. *Id.* The Superior Court reasoned that "[w]here a motion *in limine* has been argued and denied before trial, it is unnecessary for the movant's counsel to renew his or her objection during trial." *Id.* The Superior Court added that, because the appellant's counsel "was forced by th[e] pretrial ruling to anticipate the eventual admission of the evidence to which he objected," the appellant had not "opened the door" to the admission of the evidence through the appellant's questioning of witnesses. *Id.* at 1331.

Similarly, in *Sprague v. Walter*, 656 A.2d 890 (Pa. Super. 1995), the Superior Court relied upon *Miller* and *Stern* to conclude that, following the trial court's denial of a newspaper corporation's motion *in limine* to exclude evidence concerning one of its reporter's psychiatric history, the corporation was not required to renew its objection to the admission of the evidence each time it was used at trial and that the corporation did not waive its objection to the admissibility of evidence through its "defensive use of the evidence." *Sprague*, 656 A.2d at 906 (providing that, "[h]aving received an unfavorable ruling on its motion to exclude all such evidence, [the appellant] was entitled to use that evidence to its best advantage in order to try to win the case, and not be forced to wait for possible vindication of the trial court's adverse ruling"). And, in *Renninger v. A & R Machine Shop*, 163 A.3d 988 (Pa. Super. 2017), the Superior Court relied upon *Sprague* to reject the appellee's argument that the "[a]ppellants opened the door to industry standards evidence because [the appellants'] expert was the first to address it at trial."

*Renninger*, 163 A.3d at 997 n.8.  Observing that the appellants had filed a pretrial motion *in limine* to exclude the evidence, which the trial court denied, the Superior Court reasoned that, "[a]fter their unsuccessful motion *in limine*, [the a]ppellants had the right to devise an appropriate trial strategy."  *Id.* at 997 & n.8.

In view of the above, we conclude that the *Ohler* majority's holding is at odds with Pennsylvania precedent.  Turning to our rules of evidence, we emphasize that Rule 103 explicitly provides that:  (1) "[a] party may claim error in a ruling to admit . . . evidence" when a party, *inter alia*, "makes a . . . motion *in limine*;" and (2) "a party need not renew an objection . . . to preserve a claim of error for appeal" once a trial court "rules definitively on the record."  Pa.R.E. 103(a)(1)(A), (b).  Moreover, our rules of evidence are to be "applied so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."  Pa.R.E. 102.  Notwithstanding any similarities between our rules of evidence and their federal counterparts, we reiterate that, at bottom, this Court is not bound by *Ohler* in deciding the issue presented to us today.  Upon careful review, we, like most of other states to have considered this issue, conclude that the majority rule in *Ohler* is in tension with our state rules and that notions of fairness weigh in favor of adopting the approach of the *Ohler* dissent.  Finally, while it is obvious that the issue before us is subject to much scholarly discourse, we need not provide a lengthy discussion of that discourse here.  It suffices to say that, undisputedly, a majority of the scholarship on the topic likewise takes the view of the *Ohler* dissent, providing further support for our adoption of that view today.  *See, e.g.*, *Gary M.B.*, 676 N.W.2d at 482-83 (observing that *Ohler* holding is "against the great weight of academic authority").[15]

---

[15] As previously mentioned, Appellant and the Commonwealth present arguments related to the terms "waiver" and "forfeiture" and whether Appellant "waived" or "forfeited" his appellate right under recognized conceptualizations of those terms.  (*See* Appellant's (continued…)

## IV. CONCLUSION

For the reasons stated,[16] we hold that a defendant does not waive his or her right to appellate review of the admissibility of a prior conviction for impeachment purposes under the circumstances presented—*i.e.*, where the defendant preemptively introduces that evidence on direct examination following a trial court's definitive ruling against him on a motion *in limine*. Accordingly, we reverse the judgment of the Superior Court and remand this matter for the Superior Court to consider the merits of Appellant's evidentiary challenge.[17]

---

Brief at 15 (quoting *Commonwealth v. Lucarelli*, 971 A.2d 1173, 1179 (Pa. 2009) ("Waiver is 'an intentional and voluntary relinquishment of a known right. By contrast, forfeiture, . . . does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's 'extremely serious misconduct' or 'extremely dilatory conduct.'"); Commonwealth's Brief at 25-26 n.14 (relying upon *United States v. Ferriero*, 866 F.3d 107, 118 n.10 (3d Cir. 2017), and *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976), to argue that "forfeiture" does not require intentional misconduct and can result from failure to timely assert right or largely passive acquiescence and from taking vacillating positions). To be clear, we conclude that Appellant neither "waived" nor "forfeited" his challenge under the circumstances. Appellant's actions cannot fairly be described as "voluntary" for purposes of waiver. *See Thang*, 41 P.3d at 1168 (holding that "[a] defense lawyer who introduces preemptive testimony only after losing a battle to exclude it cannot be said to introduce the evidence voluntarily"). Nor can one reasonably say that Appellant engaged in intentional misconduct, failed to timely assert a right, passively acquiesced in the trial court's ruling, or took vacillating positions for purposes of forfeiture.

[16] Having decided this case based upon our rules of evidence and common law, we need not address Appellant's constitutional arguments. *See Commonwealth v. Humphrey*, 283 A.3d 275, 295 n.21 (Pa. 2022) (declining to address constitutional arguments of appellant and *amici* given that Court resolved issue on statutory grounds); *In re Fiori*, 673 A.2d 905, 909 (Pa. 1996) (observing "sound tenet of jurisprudence that courts should avoid constitutional issues when the issue at hand may be decided upon other grounds").

[17] On February 6, 2024, the Commonwealth filed an application to correct an omission in the record (Application) pursuant to Pennsylvania Rule of Appellate Procedure 1926(b)(1) (providing that, "[i]f anything material to a party is omitted from the record by error, breakdown in processes of the court, or accident or is misstated therein, the omission or misstatement may be corrected . . . by the trial court or the appellate court upon application or on its own initiative at any time"). The Commonwealth points out that the notes of testimony for Appellant's sentencing hearing were not included in the certified
(continued…)

Chief Justice Todd and Justices Donohue, Dougherty, Wecht, Mundy and McCaffery join the opinion.

---

record and requests that this Court order that the omission be corrected because, "[i]n addition to appropriately providing a complete record of the proceedings in the trial court, . . . the sentencing notes contain information about [Appellant's] record and custodial history that could potentially inform the question presented on appeal." (Application, 2/6/2024, at 2, ¶ 6.) Appellant filed a response in opposition to the Application (Response), arguing that the sentencing transcript has no bearing on the purely legal, procedural issue before the Court. Appellant submits that implicit in the Commonwealth's "oblique reference" to its reasons for seeking the transcript's addition "is an attempt to show—based on information that may be in the sentencing transcript—that the *merits* of [Appellant's] claim . . . might not be substantial," and he argues that the merits of his claim are not currently at issue. (Response, 2/10/2024, at 3-4, ¶¶ 6, 9 (emphasis in original).) Following Appellant's response, the Commonwealth filed an application for leave to file a reply (Reply Application) in further support of its Application, which Appellant likewise opposes. Upon consideration, we agree with Appellant that the sentencing transcript is not material to either party for our present purposes, and, accordingly, we deny the Commonwealth's Application as well as its request to file a Reply Application. We do so, however, without prejudice to either party to seek such relief in the Superior Court on remand.